# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Itama Development Associates, LP,   :
          Appellant   :
         :
       v.   :
         :
Zoning Hearing Board of the   :
Township of Rostraver   :
         :
       v.   :
         :
Township of Rostraver   :
         :
       v.   :   No. 985 C.D. 2015
         :   Argued: November 16, 2015
Minuteman Environmental Services,   :
Inc.   :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
         HONORABLE MARY HANNAH LEAVITT, Judge[2]
         HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION
BY JUDGE LEAVITT                  FILED: January 7, 2016

      Itama Development Associates, L.P., appeals an order of the Court of Common Pleas of Westmoreland County (trial court) denying the consolidated land use appeals of Itama and its tenant, Minuteman Environmental Services, Inc. In doing so, the trial court affirmed the Rostraver Township Zoning Hearing Board's (Zoning Board) order directing Minuteman to cease and desist commercial

---

[1] This case was assigned to the opinion writer before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

trucking activities on Itama's property.  Because Minuteman's activities were a continuation of a legal nonconforming use, we reverse.

## Background

The subject Property is a 2.9-acre parcel in Rostraver Township's B-2 Retail Business District owned, at times relevant to this appeal, by the Belle Vernon Area School District.  Prior to the enactment of the Township's zoning ordinance in 1970,[3] the Property was the site of the School District's Rostraver High School.  In addition to the school building, the Property contained a four-bay garage and an underground diesel fuel tank.  The School District used the garage for storage, fueling, parking and routine maintenance of its school buses and vehicle fleet.  These uses continued even after the school building was demolished.  There is no dispute that, because the School District's use of the Property predated the Zoning Ordinance, it was a legal nonconforming use under Section 195-82 of the Zoning Ordinance.[4]  In 2009, the School District purchased a former 84 Lumber facility in the Township for the fueling, maintenance and parking of its vehicle fleet.  As of June 6, 2009, the School District discontinued long-term storage of its buses and vehicles on the Property, but it continued to use the Property for refueling and maintenance.

---

[3] ZONING ORDINANCE OF THE TOWNSHIP OF ROSTRAVER, Ordinance No. 114 (adopted October 5, 1970), as amended by Ordinance No. 300 (adopted July 25, 1995) (Zoning Ordinance).

[4] Section 195-82 states:

> Subject to the provisions of this article, a use of building or land existing at the time of the enactment of this chapter may be continued even though such use does not conform to the provisions of these regulations for the district in which it is located.

ZONING ORDINANCE §195-82.

On April 3, 2013, Itama purchased the Property from the School District and agreed to allow the District to continue using the Property as a bus garage and refueling station until its new maintenance facility was complete. Reproduced Record at 47a (R.R. __). The School District continued to use the Property until July 2013. Zoning Board Decision at 2.

On April 25, 2014, Itama applied for an occupancy permit proposing a "continuation of non-conforming use and/or structure as [a] vehicle garage." R.R. 4a. The Township's Zoning Officer, Robert Lahr, rejected Itama's application, finding that the School District had abandoned its nonconforming use in 2009. Itama appealed the Zoning Officer's determination to the Zoning Board.

Itama's notice of appeal stated that its prospective tenant, Kiester Miller Investments, LLC (KMI), would provide fresh water to gas well drillers and operators in southwest Pennsylvania. Itama represented that "[t]he proposed use is a continuation of a prior non-conforming use. The Property was used as a bus garage both prior to and after the Township's zoning ordinance, and the proposed use is virtually identical." R.R. 13a. More specifically, Itama described the proposed use of the Property as follows:

> Park approximately 25 water trucks at the site on an intermittent basis. The trucks are on the road for the majority of each 24 hour day. The … facility will be used as a central location for the drivers to park the trucks while they switch out their personal items and supplies, switch drivers, fuel the vehicle and prepare for the next trip. This is consistent with the prior use to store school buses on this property.
>
> No water of any kind will be stored in the vehicles. All water to be delivered is picked up at an off-site source, and transported directly to the purchaser. No water will be in the trucks when at, leaving from or returning to the … site.

3

> Minor upkeep and maintenance of the trucks may be performed while the trucks are at the … site. This would potentially include fueling, changing windshield wipers and repairing flat tires (which is consistent with the prior use). Major repairs of any kind are sent offsite.

R.R. 14a.

At a hearing before the Zoning Board on June 11, 2014, Itama's president, Ron Amati, testified that KMI would use the Property to fuel and perform "basic maintenance" on vehicles, such as fixing a flat tire. R.R. 78a. Itama's counsel represented that KMI would not store vehicles on the Property other than the occasional, overnight parking of a temporarily disabled vehicle. Rather, KMI's trucks would "come in, get fueled, maintained, switch drivers, and they go back out." R.R. 96a.

At the conclusion of the hearing, the Board orally approved Itama's request to continue the nonconforming use of the Property as a vehicle garage, without limitation. On June 12, 2014, the Zoning Board sent Itama a letter approving its occupancy permit; it did not issue a formal decision with findings of fact and conclusions of law. Shortly thereafter, KMI withdrew from the deal, and Itama leased the Property to Minuteman Environmental Services, Inc. (Minuteman) for a commercial trucking operation serving the natural gas drilling industry.

In response to complaints from nearby residents, Zoning Officer Lahr visited the Property and issued identical zoning violation notices to Itama and Minuteman on July 15, 2014. According to these notices, Lahr observed

> a truck and numerous, large, covered containers being stored on the lot. Later discussions that day with Dan Finch and Brian Bolus of Minuteman confirmed that their principal occupancy at this site will be to dispatch trucks and the containers to various job sites and then to return them again for temporary

4

storage. Upon review of my files, no zoning or occupancy permit has been approved by the township for this use. You must cease and desist from using this property in violation of the zoning ordinance.

R.R. 179a. Lahr cited eight different violations of the Zoning Ordinance. R.R. 179a-80a.

Itama appealed to the Zoning Board, which held a hearing on October 8, 2014. Ron Amati testified that Minuteman's operations are the same as those proposed by KMI in Itama's prior application for an occupancy permit: trucking, dispatch and minor repairs.[5] R.R. 197a.

Brian Bolus, a representative of Minuteman, described the services his company provides to customers in the gas industry. Minuteman uses fixed body trucks (dump trucks) as well as trucks that transport removable "roll-off" boxes. Minuteman rents roll-off boxes and "frac tanks"[6] to its customers. Minuteman hauls empty roll-off boxes to the customer's worksite, drops them off, retrieves them when full, and transports them to landfills for disposal of the contents. These contents consist of drill cuttings (rock chips and dirt) produced during the drilling of natural gas wells. Minuteman returns the emptied boxes and tanks to the Property where they remain in the open yard until the next rental. Although Bolus testified that Minuteman's business does not include the "storage" of roll-off boxes, Minuteman keeps its roll-off boxes and frac tanks on the Property when they are not rented out. The number of roll-off boxes on the Property varies with the volume of box and tank rentals at any given time.

---

[5] As of the Zoning Hearing Board hearing on October 8, 2014, the underground fuel tank was not in use because Itama had not yet secured the necessary permits.

[6] The Zoning Board noted in its decision that a frac tank is used to hold liquid or sludge material produced during the gas well drilling and gas collection process.

Zoning Officer Lahr testified that his understanding of the School District's legal nonconforming use was fueling and minor maintenance of vehicles. R.R. 235a. He believed that Minuteman had impermissibly expanded the nonconforming use because he observed storage containers on the ground, which "looked like … a contractor's yard or staging area. It didn't look like the principal use was repairing of trucks or minor maintenance or fueling." R.R. 235a.

Kenneth Lee, an inspector from the Department of Environmental Protection, testified that he visited the Property on five occasions from July to September 2014. He observed roll-off containers, some containing residual waste from drilling activities; empty frac tanks; and other equipment. Lee also observed employees erecting a containment area upon which emptied frac tanks would be placed. On his last two visits, Lee observed a disabled truck parked on the Property that was loaded with residual drill cuttings.

Neighboring landowners testified that when the School District used the Property it conducted its operations between 6:00 a.m. and 5:00 p.m. during the academic year, with occasional evening and weekend activity. Typically, the bus drivers would arrive in the morning, pick up their buses, drop them off after the morning run, and then return in the late afternoon to pick up the buses to transport students home. In contrast, Minuteman's activities occur at any time of day. Backup horns and alarms are audible at all times, as are the sounds of the roll-off boxes being dragged across the ground.

The Zoning Board found that Minuteman engaged in the following nonconforming uses between July 15, 2014, and September 5, 2014:

(a) Parking of vehicles, including dump trucks and non-fixed body trucks;

6

(b) Storage, long or short-term, of roll-off boxes and frac tanks;

(c) Construction and use of a "containment area" to prevent residual waste … from coming into contact with the ground;

(d) Storage of roll-off boxes containing residual waste from drill cutting activity;

(e) Storage of residual waste on a truck for twenty-nine (29) days;

(f) Drainage of leachate onto the ground;

(g) Permitting the presence of [DEP-regulated] material produced in the gas collection and production industry; [and]

(h) Use of the property during late night and early morning hours.

Zoning Board Opinion at 7. The Zoning Board found that the School District had not used the property for these purposes between June 7, 2009, and July 2013.

The Zoning Board held that the School District had abandoned its lawful nonconforming use of the Property for parking vehicles under Section 195-88 of the Zoning Ordinance[7] in 2009, which was more than 12 months before Minuteman began using the Property for truck parking and outdoor storage of roll-off boxes and frac tanks in July 2014. The District's abandonment of the parking use precluded Itama or any tenant from resuming that use of the Property four

---

[7] Section 195-88 states, in relevant part:

A nonconforming use of a building or land that has been abandoned or discontinued shall not thereafter be returned to a nonconforming use. A nonconforming use shall be considered abandoned as follows:

* * *

C. When a nonconforming use has been discontinued for a period of 12 months….

ZONING ORDINANCE §195-88.C.

years later. *Id*. The Board further held that Minuteman's uses of the Property constituted an impermissible change in the legal nonconforming uses by the School District from 2009 through 2013. Stated another way, Minuteman's uses of the Property, other than for fueling and minor vehicle maintenance, violated the Zoning Ordinance. For these reasons, the Zoning Board denied Itama's appeal of the Zoning Officer's violation notice and cease and desist order. Itama appealed to the trial court.

The trial court reviewed the testimony from the June 11, 2014, hearing and held that it supported the Zoning Board's finding that the School District used the Property to fuel, maintain and park vehicles from a time preceding the passage of the Zoning Ordinance in 1970 until it permanently discontinued parking its vehicles on the Property on June 6, 2009. The trial court also found support for the Zoning Board's finding that the only lawful nonconforming use that continued uninterrupted until July 2013 was the School District's use of the Property for fueling and minor maintenance of vehicles. The trial court agreed with the Board that the nonconforming use of parking vehicles on the Property had been abandoned in 2009.

Accordingly, the trial court held that the only activities that could have continued on the Property as a permissible nonconforming use would be fueling and minor maintenance of vehicles, not a parking lot or storage center. The trial court concluded that Minuteman's extended parking of trucks, storage of roll-off boxes, frac tanks and other containers, along with the construction of a containment area, were not uses similar to the School District's uses of the Property prior to the enactment of the Zoning Ordinance. The trial court denied

8

Itama's land use appeal and affirmed the Zoning Board's decision. Itama now appeals.[8]

On appeal,[9] Itama raises three issues. First, Itama argues that the Zoning Board's June 2014 approval of its occupancy permit formed the law of the case, which bound the Board in the October 2014 proceeding on the issue of the legality of Minuteman's nonconforming uses. Relatedly, Itama contends that the Township was precluded under the doctrine of *res judicata* from relitigating any aspect of the legality of the nonconforming use in the second proceeding. Second, Itama contends that the Zoning Board erred in determining that any portion of the School District's lawful nonconforming use of the Property as a vehicle garage, particularly parking, had been abandoned. Third, Itama asserts that the Board erred in determining that Minuteman's use of the Property constitutes an unlawful change in the prior lawful nonconforming use by the School District.

**Approval of Occupancy Permit**

Itama first argues that the Zoning Board's approval of its occupancy permit at the June 11, 2014, hearing established the law of the case with respect to the lawful nonconforming uses. Itama contends that, contrary to the Board's findings and conclusions in its November 21, 2014, decision, the Board did not limit Itama's occupancy permit to "diesel fueling and minor maintenance," nor did

---

[8] Minuteman was precluded from filing a brief in this appeal. At oral argument, counsel for Itama disclosed that Minuteman is no longer its tenant on the Property. Nevertheless, we decide the case on the issues presented by Minuteman's use because they concern the scope of Itama's lawful nonconforming use.

[9] This Court's review when the trial court does not take additional evidence is to determine whether the zoning hearing board committed an error of law or abused its discretion. *TKO Realty, LLC v. Zoning Hearing Board of City of Scranton*, 78 A.3d 732, 735 n.1 (Pa. Cmwlth. 2013).

it hold that the School District had abandoned its use of the Property for parking vehicles. Rather, the June 2014 transcript, exhibits, and Itama's application and appeal documents all show that Itama intended to lease the Property to a tenant for parking, maintaining, fueling and dispatching trucks. The Board's blanket approval of Itama's occupancy permit confirmed the validity of those uses. Because the Township did not appeal the Zoning Board's June 12, 2014, decision, it cannot, now, litigate the validity of any aspect of the prior nonconforming use of the Property as a vehicle garage.

The law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Anter Associates v. Zoning Hearing Board of Concord Township*, 79 A.3d 1230, 1233 (Pa. Cmwlth. 2013) (citing *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995)).

> Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Starr*, 664 A.2d at 1331.

We agree with the Zoning Board that the law of the case doctrine is inapplicable here. At the June 11, 2014, hearing on Itama's occupancy permit, the Zoning Board considered a broadly worded application that proposed using the Property for a commercial trucking operation servicing the gas drilling industry.

10

Much like the School District's prior use of the Property as a vehicle garage, Itama indicated that its prospective tenant, KMI, would use the site as a central location to park and maintain its trucks before and after they were dispatched to service KMI's customers. Based on Itama's application and the testimony of its president, Ron Amati, the Board approved, without limitation, Itama's request to continue the School District's nonconforming use of the Property as a vehicle garage.

In July 2014, the Zoning Officer observed a different tenant, Minuteman, using the Property. After investigation, he concluded that Minuteman was not operating in compliance with the occupancy permit and cited Itama and Minuteman for eight Zoning Ordinance violations. As noted above, the Board held that Minuteman's parking of vehicles and storage of roll-off boxes and frac tanks were nonconforming uses. Itama appealed the Zoning Officer's notices to the Board. The law of the case doctrine applies to rulings within the same case, not to rulings in two separate cases. That is the situation here. Itama's real argument is that the Zoning Board's holdings are inconsistent, but this does not implicate the law of the case doctrine.

Itama also argues that the Township was precluded under the doctrine of *res judicata* from relitigating any aspect of the legality of the nonconforming use in the second proceeding because that issue had been finally decided by the Zoning Board in its June 2014 decision. Itama contends that the Board resolved the same issues of law and fact in the prior action, and approved "the proposed nonconforming use of a vehicle garage on the Property," including the parking and dispatch of vehicles. Itama's Brief at 22. Because the Township did not appeal that decision, Itama asserts that the Township (and the Zoning Board) could not

11

later revisit the issue of the nonconforming use and decide that portions of the approved vehicle garage use had been abandoned.

Our Supreme Court has explained the doctrine of *res judicata* as follows:

> The term "res judicata" is often sweepingly used, by courts and litigants alike, to refer to the various ways in which a judgment in one action will have a binding effect in a later action. "Res judicata" encompasses the modern principle of issue preclusion (traditionally known as estoppel), which is the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment.

*Clark v. Troutman*, 502 A.2d 137, 139 (Pa. 1985). To support a claim of *res judicata*, a party must show a concurrence of four conditions: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Takacs v. Indian Lake Borough*, 10 A.3d 416, 418 (Pa. Cmwlth. 2010). "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Id*.

Itama's *res judicata* argument is unavailing because it is impossible to discern which issues of fact were essential to the Zoning Board's first decision in June 2014. There, the Board considered Itama's application for an occupancy permit proposing a "continuation of non-conforming use and/or structure as [a] vehicle garage." R.R. 4a. Because the Board approved the permit without reservation, Itama urges the broadest interpretation of that approval and presumes that a "vehicle garage" entails the parking and dispatch of vehicles since those

12

activities were presented to the Board at the June 2014 hearing. However, the Zoning Board's approval of Itama's occupancy permit could arguably have contemplated limitations expressed by witnesses at the hearing. Stated another way, we cannot say on this record that the Zoning Board's first decision expressly approved the parking and storage of vehicles for all time so that the Board was estopped from considering in the second proceeding whether such uses had been abandoned.

**Abandonment of Nonconforming Use**

Itama next argues that the Zoning Board erred in finding evidence of intent to abandon, and actual abandonment of, any portion of the School District's legal nonconforming use as a "vehicle garage," specifically parking and storage of vehicles.

Section 195-88.C of the Zoning Ordinance states that a nonconforming use[10] shall be considered abandoned when, *inter alia*, it "has been discontinued for a period of 12 months." ZONING ORDINANCE §195-88.C. Where a zoning ordinance contains such a discontinuation provision, it "creates a

---

[10] The Zoning Ordinance defines a "nonconforming use" as:

> A building, structure or premises lawfully occupied at the time of the enactment of this chapter by a use that does not conform with the provisions of this chapter for the district in which it is located; also, such use resulting from amendments to the Zoning District Map or in text provisions made hereafter.

ZONING ORDINANCE §195-6. Similarly, Section 107 of the Pennsylvania Municipalities Planning Code (MPC) defines a "nonconforming use" as

> a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

Section 107 of the MPC, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10107.

presumption of the intent to abandon the use by the expiration of the designated time." *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township, Westmoreland County*, 720 A.2d 127, 132 (Pa. 1998) (quoting *Pappas v. Zoning Board of Adjustment of City of Philadelphia*, 589 A.2d 675, 678 (Pa. 1991) (Zappala, J., concurring)).

> Failure to use the property for a designated time provided under a discontinuance provision is evidence of the intention to abandon. The burden of persuasion then rests with the party challenging the claim of abandonment. If evidence of a contrary intent is introduced, the presumption is rebutted and the burden of persuasion shifts back to the party claiming abandonment.
>
> What is critical is that the intention to abandon is only one element of the burden of proof on the party asserting abandonment. The second element of the burden of proof is actual abandonment of the use for the prescribed period. This is separate from the element of intent.

*Id*. (emphasis added).

Here, the Zoning Board found that the School District abandoned its use of the Property for parking buses and other vehicles in June 2009, more than 12 months before Itama purchased the Property in 2013. In support, the Zoning Board cited as evidence of abandonment the School District's acquisition and refurbishment of the former 84 Lumber facility for the fueling, maintenance and parking of its vehicle fleet; the Zoning Officer's testimony that the School District applied for Zoning Board approval of that new facility; and an email from the School District's director of buildings and grounds stating that the District stopped using the Property in June 2009 except for fueling and maintaining its vehicles, which it continued to do there until July 2013. R.R. 119a.

We disagree with the Board's conclusion that the Township carried its burden of proof on abandonment. Itama presented uncontroverted evidence that

14

the School District continued to use the Property through July 2013 for maintaining and fueling its vehicles, activities that necessarily include parking. Thus, these activities were ongoing less than nine months before Itama applied for its occupancy permit. Itama also presented a written agreement between itself and the School District allowing the School District to continue to use the Property as a "bus garage and bus refueling station" after March 15, 2013. R.R. 47a. Finally, the email from the School District's director of buildings and grounds confirmed that the District continued to use the Property as a vehicle garage through July 2013. We hold that, in light of the foregoing, the Township failed to prove either the School District's actual abandonment of, or intention to abandon, its use of the Property as a vehicle garage, which includes the fueling, maintaining, parking and dispatch of vehicles.

## Change in Lawful Nonconforming Use

Itama's final assignment of error is that the Zoning Board erred in determining that Minuteman's use of the Property constituted a change in the prior legal nonconforming use, in violation of Section 195-87 of the Zoning Ordinance.[11] Itama contends that the Board erred in requiring each tenant's use to be identical to that of the School District. Itama posits that Minuteman's use of the Property did not change the prior nonconforming use approved by the Board, *i.e.*, a vehicle

---

[11] It states:

> No nonconforming building, structure or use shall be changed to another nonconforming use, except that a nonconforming building, structure or use may be changed to another nonconforming use of equal or more restricted classification as a variance, after public hearing, subject to the standards imposed by the Zoning Hearing Board, to reasonably assure that the changes will not adversely affect the public interest.

ZONING ORDINANCE §195-87.

15

garage dispatching trucks and providing hauling services offsite, and parking vehicles incident to such activities. In Itama's view, Minuteman's use of the Property was the same as, or a valid continuation of, the School District's uses except for permissible variations in the types of vehicles and hours of operation. We agree.

To qualify as a continuation of a nonconforming use, the current use must be sufficiently similar to the nonconforming use as not to constitute a new or different use. *Limley v. Zoning Hearing Board of Port Vue Borough*, 625 A.2d 54, 55 (Pa. 1993). The proposed use need not, however, be identical to the existing use; similarity in use is all that is required. *Id.* (citing *Pappas*, 589 A.2d 677-78). In determining what is a proper continuation of a nonconforming use, *i.e.*, whether a proposed use bears adequate similarity to an existing nonconforming use, the doctrine of natural expansion must be given effect. *Limley,* 625 A.2d at 56. The doctrine of natural expansion "permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use." *Pappas*, 589 A.2d at 677. A mere increase in the intensity of a use cannot justify a finding of a new or different use. *Foreman v. Union Township Zoning Hearing Board*, 787 A.2d 1099, 1103 (Pa. Cmwlth. 2001). *See also, e.g., Limley*, 625 A.2d 54 (use of property as public restaurant and bar was permissible expansion of prior nonconforming use as private club); *Pappas*, 589 A.2d 675 (full-service pizza restaurant was permissible expansion of takeout sandwich shop); *Clanton v. London Grove Township Zoning Hearing Board*, 743 A.2d 995 (Pa. Cmwlth. 1999) (processing topsoil by drying and bagging it prior to transport was continuation of nonconforming use of trucking loose topsoil away for bulk sale).

16

During the relevant time period from 2009 through 2013, the School District used the Property as a vehicle garage for fueling, maintaining and dispatching its buses and vehicles. It is undisputed that the District's buses departed the Property in the morning, picked up and delivered students to school, and then returned to the Property. The process was reversed at the end of the day. As noted above, the Board erred in concluding that the parking of vehicles for any duration was not ancillary to the School District's operation of a vehicle garage. Indeed, the Board approved Itama's application to continue the nonconforming use of the Property as a vehicle garage without limitation, and with full knowledge that Itama's proposed tenant would essentially be running a trucking operation 12 months a year. The incidental storage of roll-off boxes and other containers is an increase in the intensity of the prior use, but is not sufficiently dissimilar to the School District's vehicle garage as to constitute an impermissible expansion of the prior nonconforming use.

## Conclusion

For all of the foregoing reasons, we reverse the trial court's order.

_____
MARY HANNAH LEAVITT, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Itama Development Associates, LP,  :
            Appellant    :
                                  :
           v.            :
                                    :

Zoning Hearing Board of the    :
Township of Rostraver        :
                                    :
           v.            :
                                    :

Township of Rostraver        :
                                    :
           v.            :    No. 985 C.D. 2015
                                    :

Minuteman Environmental Services,  :
Inc.                              :

## **O R D E R**

AND NOW, this 7th day of January, 2016, the order of the Court of Common Pleas of Westmoreland County dated May 13, 2015, in the above-captioned matter is REVERSED.

                                    _____
                                    MARY HANNAH LEAVITT, Judge