IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uptown Partners,

        Appellant          :

                            :

        v.                  :

                            :

City of Pittsburgh Zoning      :

Board of Adjustment, City of   :   No. 528 C.D. 2017

Pittsburgh and Robert C. Eckenrode  :   Argued:  November 14, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: December 27, 2017


        Uptown Partners (Objector) appeals from the Allegheny County Common Pleas Court's (trial court) March 22, 2017 order affirming the City of Pittsburgh's (City) Zoning Board of Adjustment's (ZBA) decision and dismissing Objector's appeal.  Essentially, the issue before this Court is whether the ZBA erred by concluding that the use of a three-story brick dwelling located at 53 Miltenberger Street, in the City's Residential, Single-Family Attached, High-Density (R1A-H) zoning district (Property) as a two-unit dwelling was a legal pre-existing nonconforming use that was not abandoned.[1]  After review, we affirm.

        The structure on the Property was built between 1890 and 1905.  *See* Reproduced Record (R.R.) at 52a.  When the City's Zoning Code (Code) was enacted

---

[1] Objector's Statement of Questions Involved includes four questions: whether the trial court erred or abused its discretion in affirming the ZBA's decision (1) when the ZBA's findings were based on objected-to hearsay and evidence of the structure's capacity on the purchase date; (2) when the use was abandoned; (3) when the Property was occupied by a single, blood-related family; and, (4) whether the ZBA erred by concluding that the use was not abandoned.  Because the four issues are subsumed in an analysis of the first, the Court has combined the issues.

in 1958,[2] the area in which the Property is located was designated an R1A-H zoning district, which did not permit two-unit residential use as of right.[3] *See* Code § 911.02; *see also* City/ZBA Br. at 16. The Code nevertheless permitted a legal nonconforming use, defined as "the use of any land, building or structure, which does not comply with the use regulations of the zoning district in which such use is located, but which complied with the use regulations in effect at the time the use was established."[4] Code § 926.152.

Robert Eckenrode (Eckenrode) purchased the Property in 2005 as an investment. On June 5, 2015, Eckenrode filed an application (Application) with the ZBA for "continued use of [the] existing dwelling structure as a two[-]family dwelling," pursuant to Section 911.04 of the Code (relating to use standards), claiming that the two-unit use pre-dated the City's R1A-H zoning district designation, making it a legal nonconforming use. R.R. at 30a.

---

[2] With the exception of the zoning districts and their boundary maps, effective February 26, 1999, the City's 1958 zoning code was amended and replaced in its entirety by the current Code. *See* Code §§ 901.05, 901.06.

[3] Under Section 911.02 of the Code, "[t]wo-[u]nit [r]esidential means the use of a zoning lot for two dwelling units that are contained within a single building." Code § 911.02. Section 926.72 of the Code defines "dwelling unit" as

> a building or portion thereof designed and used for residential occupancy by a single family and that includes exclusive sleeping, cooking, eating and sanitation facilities. Buildings with more than one (1) set of cooking facilities are considered to contain multiple dwelling units unless the additional cooking facilities are clearly accessory, such as an outdoor grill.

Code § 926.72.

[4] Section 921.01.A of the Code states:

> It is the general policy of the City to allow uses, structures and lots that came into existence legally in conformance with the then-applicable requirements to continue to exist and be put to productive use, but to bring as many aspects of such situations into compliance with existing regulations as is reasonably possible.

Code § 921.01.A.

2

On May 12, 2016, the ZBA held a public hearing, at which Objector, a non-profit civic organization consisting of residents, institutions and business owners in the City's Uptown district,[5] opposed Eckenrode's Application on the basis that the proposed use is not permitted in the City's R1A-H zoning district. On August 18, 2016, the ZBA granted the Application. Objector appealed from the ZBA's decision to the trial court. Eckenrode and the City intervened. On March 22, 2017, the trial court affirmed the ZBA's decision and dismissed Objector's appeal. Objector appealed to this Court.

Initially, "[a] lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction[.]" *Hunterstown Ruritan Club v. Straban Twp. Zoning Hearing Bd.*, 143 A.3d 538, 545 (Pa. Cmwlth. 2016). "[A] lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed, unless . . . it is abandoned . . . ." *Id.* (quoting *Pa. Nw. Distribs., Inc. v. Zoning Hearing Bd. of Moon Twp.*, 584 A.2d 1372, 1375 (Pa. 1991)). Thus, "a property owner's right to continue operating a legal nonconforming use on its property is an interest that runs with the land, so long as the use is not abandoned." *DoMiJo, LLC v. McLain*, 41 A.3d 967, 972 (Pa. Cmwlth. 2012). "To qualify as a continuation of a nonconforming use, the current use must be sufficiently similar to the nonconforming use as not to constitute a new or different use." *Itama Dev. Assocs., LP v. Zoning Hearing Bd. of the Twp. of Rostraver*, 132 A.3d 1040, 1051 (Pa. Cmwlth. 2016). "The property owner has the burden to prove the existence of a nonconforming use[.]" *Barnabei v. Chadds Ford Twp. Zoning Hearing Bd.*, 118 A.3d 17, 23 (Pa. Cmwlth. 2015); *see also* Section 921.01.F of the Code, Code § 921.01.F.

---

[5] "The mission of [Objector] . . . is to ensure responsible growth in Uptown, a neighborhood which contains small houses . . . , businesses, a University, and a [h]ospital." R.R. at 158a.

Section 921.02.B.1 of the Code declares that once a nonconforming use is abandoned, it "shall not be reestablished or resumed." Code § 921.02.B.1. Section 921.02.B.2 of the Code provides, in relevant part:

A nonconforming use shall be presumed abandoned when any one (1) of the following has occurred:

(a)  A less intensive use has replaced the nonconforming use;

. . . .

(c)  The owner has physically changed the building or structure or its fixtures or equipment in such a way as to clearly indicate a change in use or activity to something other than the nonconforming use; or

(d)  The use has been discontinued, vacant or inactive for a continuous period of at least one (1) year, provided this presumption may be rebutted upon showing, to the satisfaction of the [ZBA] that the owner had no intention to abandon. Where appropriate, the [ZBA] may require contemporaneous documentation of previous use or intended use, such as leases or real estate advertisement, to rebut the presumption.

Code § 921.02.B.2.

Where[, as here,] a zoning ordinance contains such a discontinuation provision, it 'creates a presumption of the intent to abandon the use by the expiration of the designated time.' *Latrobe Speedway, Inc. v. Zoning Hearing B[d.] of Unity T[wp.], Westmoreland C[ty.],* . . . 720 A.2d 127, 132 ([Pa.] 1998) [(*Latrobe II*)] ([adopting and] quoting *Pappas v. Zoning B[d.] of Adjustment of [the] City of Phila[.],* . . . 589 A.2d 675, 678 ([Pa.] 1991) (Zappala, J., concurring)).

Failure to use the property for a designated time provided under a discontinuance provision is evidence of the intention to abandon. The burden of persuasion then rests with the party challenging the claim of abandonment. If evidence of a contrary intent is introduced, the presumption is rebutted and

4

the burden of persuasion shifts back to the party claiming abandonment.

What is critical is that the intention to abandon is only one element of the burden of proof on the party asserting abandonment. The second element of the burden of proof is actual abandonment of the use for the prescribed period. This is separate from the element of intent.

*Id.* . . .

*Itama Dev. Assocs., LP*, 132 A.3d at 1049-50.

Objector argues that the ZBA erred by concluding that the Property's use as a two-unit dwelling was a legal pre-existing nonconforming use,[6] because its findings were based on objected-to hearsay, mere conjecture about the Property's capacity when it was purchased, and insufficient evidence of a two-unit use since 1950. We disagree.

At the ZBA hearing, Eckenrode testified that although there was no certificate of occupancy for the Property's use as a two-family dwelling and he did

---

[6] The City/ZBA assert(s) that, by failing to raise the issue before the ZBA, Objector waived its argument that Eckenrode failed to prove the Property's use as a two-family dwelling was legal when the 1958 Code was enacted. The law is well-settled that "[i]f parties do not request that the trial court hear additional evidence, they waive arguments which were not raised before the [ZBA]." *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth. 2002). We agree that Objector's arguments to the ZBA focused on whether the Property was historically used as a single-family residence and, irrelevantly, on whether the Application met variance criteria (*i.e.*, unique nature, unnecessary hardship and alternative uses). *See* R.R. at 55a-59a, 114a. However, Objector's counsel asked Eckenrode whether "the use of [the Property] . . . [was] illegal under the 1950 --." Eckenrode's counsel objected, and the ZBA declared: "That's asking him to draw a legal conclusion, which is for the [ZBA] to do." R.R. at 56a; *see also* R.R. at 57a. In addition, Objector specifically raised the issue in his post-hearing submissions. *See* R.R. at 122a-123a.

Eckenrode's claim that the Allegheny County property assessment records "identify the subject [P]roperty as a two-family dwelling and form the basis upon which *ad valorem* real property taxes for the [P]roperty have been levied and assessed against the [P]roperty and paid by Eckenrode," was raised for the first time to the trial court and, thus, is waived. Eckenrode Br. at 18-19; *see also* R.R. at 175a n.2. Notwithstanding whether the ZBA may have been able to take judicial notice of such records, it did not do so.

5

not fully inspect the Property before buying it from Peter and Karolina Slezak's heirs in 2005, he observed two exterior utility meters. *See* R.R. at 54a, 82a-84a; *see also* Certified Record, Notes of Testimony, May 12, 2016 (N.T.) at 14.[7] The ZBA accepted into evidence Eckenrode's interior and exterior photographs of the Property, and Eckenrode testified that the Property has two water meters and two gas meters, a bathroom and kitchen on the first floor, a bathroom and kitchen on the second floor, and a kitchen on the third floor. *See* R.R. at 49a-52a, 85a-86a, 94a-100a, 103a-105a. Eckenrode described his intention to renovate the Property and lease out two units.[8] *See* R.R. at 53a-54a.

When asked if he had "any other evidence that the [P]roperty . . . has been used as a two-unit residential property[,]" Eckenrode answered: "Only that there[] are three kitchens that were used before. When I talked to [Bernard and Sandra Daugherty (the Daughertys)], they knew the families there. They . . . lived there for years." R.R. at 53a. Eckenrode offered the Daughertys' October 8, 2013 affidavits in support of his Application.[9] *See* R.R. at 46a-47a. The Daughertys represented therein that they were personally acquainted with the Property from 1952 through the day they executed the affidavits, and that it was always a two-unit residential dwelling with at least two kitchens and two bathrooms. *See* R.R. at 46a-49a, 101a-102a. The ZBA admitted the affidavits into evidence over Objector's hearsay objections. *See* R.R. at 46a, 48a, 89a.

---

[7] Page 14 of the ZBA's transcript was originally omitted from the Reproduced Record. Although Objector's counsel supplied the missing page to the Court, the page was not given a Reproduced Record number.

[8] Eckenrode explained that there is a third kitchen on the structure's third floor; however, since there is no bathroom on that floor, he does not intend to rent a third unit. *See* R.R. at 52a-53a.

[9] The Daughertys' "Affidavit[s] Regarding the Occupancy of Certain Property" were supplied nearly two years before Eckenrode's June 5, 2015 Application filing, on forms issued by the City's Department of City Planning for the Office of Zoning Administration's use. *See* R.R. at 101a-102a.

Objector's program manager Joseph Wingenfeld (Wingenfeld) testified at the ZBA hearing that he obtained the Property's Cole Directory listings, which reflect that Peter and Karolina Slezak owned the Property in 2005, and Eckenrode owned it in 2013, 2014 and 2015.[10]  *See* R.R. at 59a-62a, 108a-111a.  Realtor and Objector's co-president Helen Perilloux (Perilloux) offered and the ZBA accepted into evidence a May 12, 2016 letter to the ZBA regarding Objector's concerns about the Application.[11]  *See* R.R. at 57a-59a, 86a, 106a-107a.  Perilloux also related Objector's position that the Property's use cannot be continued as a two-family residence since "it's been vacant for years," and she does not "see how it's a continued use that hasn't been in existence."  *See* R.R. at 79a; *see also* R.R. at 58a-59a.  At the ZBA hearing, Alex Denmarsh objected to Eckenrode's Application based on the occupancy and insufficient parking in violation of the City's parking ordinance.[12]  *See* R.R. at 80a, 86a, 112a.

Paul Daniels (Daniels) also testified in support of Objector's opposition to the Application.  He stated that he lived at 57 Miltenberger Street from when he was born in 1942 until 1969, when he married and moved out.  *See* R.R. at 64a, 66a.  Daniels recounted that despite living elsewhere after he married he often returned to visit and occasionally spent the night there.  *See* R.R. at 67a-68a.  Daniels further described that he purchased the properties at 55 and 57 Miltenberger Street from his

---

[10] "[A] Cole Directory includes cross-reference listings of names, phone numbers and addresses for residential and business addresses."  http://www.coleinformation.com/criss-cross-reference-directory/real-estate-agent-marketing-tools/home-reverse-phone-address-search.aspx. Last visited December 18, 2017.  The ZBA chairwoman stated that "[the ZBA] accept[s] Cole Directory records as a matter of course," as ordinary business records.  R.R. at 60a; *see also* R.R. at 61a.

[11] Notably, the objections therein were expressed in terms of whether the Application satisfies variance criteria, rather than nonconforming use requirements.

[12] Other residents appeared at the hearing in opposition to the Application based on parking and density issues that would arise from the Property's use as a two-unit dwelling.  *See* R.R. at 81a-82a.  Those residents did not offer testimony.

7

mother in 1982 and ran a small business from those properties daily until 2014. *See* R.R. at 64a-65a, 67a-69a.

Daniels related that he "got to know [the Property's residents] as [he] grew up." R.R. at 64a. Daniels always understood that Peter and Karolina Slezak owned the Property and no one other than the Slezak family lived there. *See* R.R. at 65a. He specifically recounted that, to his knowledge, "[t]here were only the two women," Genevieve Slezak Wuycheck (Wuycheck) and her daughter Janet Petty (Petty) who lived there until they both died in March 2000,[13] and no one resided at the Property thereafter. *See* R.R. at 64a-65a, 67a-69a, 73a, 86a, 113a. Daniels recalled that in the 1960s or 1970s, he observed Wuycheck living downstairs at the Property, and Petty living upstairs where there was a separate bathroom and kitchen. *See* R.R. at 71a-76a.

> From findings based on the foregoing evidence, the ZBA concluded:
>
> 8. Here, [Eckenrode] presented substantial, credible evidence that the [P]roperty had [been] used for at least two residential units well before the adoption of the [Code] in 1958. The indicia of the use included the kitchens on each floor; the separate bathrooms; and the separate water utility meters. Even [Daniels], as witness for [Objector], confirmed the existence of kitchens on each floor, indicating a prior use for three units, and noted that although a mother and daughter had occupied the house, the daughter had lived on the second floor.
>
> 9. The objectors did not present any credible evidence of actual abandonment of the nonconforming use.
>
> 10. Although the [P]roperty has been vacant for a number of years, the two-unit residential use was not abandoned, as a matter of law, and retains its nonconforming status, including its inability to conform to the current parking requirements for R1A-H [zoning d]istricts.

---

[13] The ZBA admitted Wuycheck's obituary into evidence. *See* R.R. at 77a-78a, 86a, 113a.

11. The [ZBA] thus concludes that the two-unit use of the structure is legally nonconforming use, which [h]as not been abandoned and may continue without providing on-site parking.

ZBA Dec. at 3 (R.R. at 16a). Without taking any additional evidence, the trial court agreed with the ZBA.

"Where a trial court takes no additional evidence in an appeal from a decision of the [ZBA], this Court is limited to considering whether the [ZBA] erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). "A [ZBA] abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth. 2007). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Slusser v. Black Creek Twp. Zoning Hearing Bd.*, 124 A.3d 771, 773 n.2 (Pa. Cmwlth. 2015). Here, the ZBA specifically found, based on undisputed record "evidence that a reasonable mind might accept as adequate to support [the] conclusion," *id.* at 773 n.2, that the Property has been continuously used as a two-unit dwelling since before the Code's 1958 enactment. *See* ZBA Dec. at 3.

Objector first contends that the Daugherty affidavits constituted impermissible hearsay and were not properly notarized. We acknowledge that the ZBA's findings and conclusions were based, in part, on the Daughertys' affidavits.

Certainly, an out-of-court statement offered to prove the truth of the matter asserted, like an affidavit, is hearsay. Pa.R.E. 801(c); *see In re Farnese*, 948 A.2d 215 (Pa. Cmwlth. 2008).[14] Although "the formal rules of evidence do not apply in local zoning board [hearings]," *Zitelli v. Zoning Hearing Bd. of Borough of Munhall*, 850 A.2d 769, 771 n.2 (Pa. Cmwlth. 2004), the law is well-established that "[h]earsay evidence, *properly objected to*, is not competent evidence to support a

---

[14] *Farnese* was reversed on other grounds, 17 A.3d 357 (Pa. 2011).

9

finding of the [ZBA]." *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). Accordingly, this Court has specifically held that hearsay "must be sufficiently corroborated by other evidence in order to be considered competent evidence." *Lake Adventure Cmty. Ass'n, Inc. v. Dingman Twp. Zoning Hearing Bd.*, 79 A.3d 708, 714 n.4 (Pa. Cmwlth. 2013).

The term "affidavit" is defined in Section 102 of the Judicial Code as "an unsworn document containing statements of fact and a statement by the signatory that it is made subject to the penalties of [Section 4904 of the Crimes Code,] 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities)."[15] 42 Pa.C.S. § 102. "[A]n affidavit is inadmissible hearsay unless it is corroborated by other evidence or falls within an exception to the hearsay rule."[16] *Farnese*, 948 A.2d at 219. The ZBA herein was cognizant of that requirement.[17] *See* R.R. at 48a. Moreover, "notarization does not convert the hearsay statements within an affidavit into proof of the truth of those statements." *Id.* Therefore, regardless of whether the Daughertys' affidavits were properly notarized,[18] their contents could not form the basis for the ZBA's

---

[15] The Daughertys' affidavits reflect that they were made "under penalty of perjury[.]" R.R. at 101a-102a.

[16] It is possible that the Daughertys' affidavits, completed on City forms used by the Zoning Administrator long before the Application was filed, *see* R.R. at 101a-102a, qualify as business records under the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, and may be an exception to the hearsay rule. However, we cannot make that determination based upon this record.

[17] The ZBA chairwoman stated: "Given the nature of the affidavit testimony, we would have to have more evidence than that." R.R. at 48a.

[18] There is no record explanation for why the Daughertys' affidavits are dated October 8, 2013 while the notary's signature and seal are dated October 9, 2013, and Objector provided no legal support for its position that the discrepancy renders the affidavits invalid. *See* R.R. at 101a-102a. At the time the affidavits were completed, Section 16(a) of The Notary Public Law of 1953 (NPL) authorized notaries to take affidavits upon oath or affirmation. Act of August 21, 1953, P.L. 1323, *as amended*, formerly 57 P.S. § 162(a), repealed by the Revised Uniform Law on Notarial Acts (RULNA), Act of October 9, 2013, P.L. 609, 57 Pa.C.S. §§ 301-331, effective October 26, 2017. Section 12.1(a) of the NPL mandated, in pertinent part, that "[t]he officer notarizing the instrument shall know through personal knowledge or have satisfactory evidence that the person appearing before the notary is the person described in and who is executing the instrument." Section 12.1 of the NPL was added by Section 7 of the Act of December 9, 2002, P.L. 1269,

10

findings without corroboration. Since Daniels' testimony corroborated the Daughertys' affidavits, the ZBA did not err by affording the affidavits weight in concluding that the Property has been a continuous nonconforming use as a two-unit dwelling since before 1958.

Relative to Objector's claim that the Property's nonconforming status was abandoned because the Property was not used for many years, this Court has clarified:

> [**Objector**], as the party asserting abandonment, **had the burden to prove that** [**the Slezaks and/or Eckenrode**] **intended to and actually did abandon the prior use**. *Latrobe Speedway, Inc. v. Zoning Hearing B*[*d.*] *of Unity T*[*wp.*], 686 A.2d 888, 890 (Pa. Cmwlth. 1996) [(*Latrobe I*), *aff'd sub nom. Latrobe II*]. It is well-established that, even where[, as here,] an ordinance contains a provision directing that discontinuation of a use for a prescribed time-period constitutes abandonment, **proof of such discontinuance alone will not satisfy** [**Objector's**] **burden**. *Id.* [Objector] must establish not only a discontinuation but also actual intent on the part of the property owner to abandon the use. Hence, [Objector] must establish that [the Slezaks and/or Eckenrode] intended to abandon the use, not just that [they] discontinued it temporarily . . . .

*Robertson v. Henry Clay Twp. Zoning Hearing Bd.*, 911 A.2d 207, 211-12 (Pa. Cmwlth. 2006) (footnote omitted; emphasis added); *see also Heichel v. Springfield Twp. Zoning Hearing Bd.*, 830 A.2d 1081, 1087 (Pa. Cmwlth. 2003).

> Actual abandonment must be demonstrated by other evidence, such as overt acts, a failure to act, or statements.

formerly 57 P.S. § 158.1. Accordingly, the notary is not certifying that the facts in the affidavit are true, but rather the affiant is the person who signed it and verified (under penalty of perjury) that the facts therein are accurate. *See* Sections 305(b) and 306 of RULNA, 57 Pa.C.S. §§ 305(b) (Comment), 306. Therefore, if the Daughertys' affidavits were not properly notarized, they would have the same effect as letters or written statements for which corroboration was still necessary. Notwithstanding, in light of our holding, we do not decide whether the Daughertys' affidavits were properly notarized or prohibited by the ZBA's hearing notice, or whether Objector waived those issues by failing to raise them at the ZBA hearing.

> *Metzger v. Bensalem T*[*wp.*] *Zoning Hearing B*[*d.*], . . . 645
> A.2d 369 ([Pa. Cmwlth.] 1994). Where non-use occurs
> because of events beyond the owner's or occupier's control,
> . . . there is no actual abandonment. *Id.* A temporary
> discontinuance of use is not abandonment (*Spencer* [*v.
> Rockland Twp. Zoning Hearing Bd.*, 533 A.2d 497 (Pa.
> Cmwlth. 1987)]), nor is a lapse of time between the
> departure of one lessee and the arrival of another. *Borough
> of Youngsville* [*v. Zoning Hearing Bd. of the Borough of
> Youngsville*, 450 A.2d 1086 (Pa. Cmwlth. 1982)]. 'A
> finding of abandonment requires proof of an intent to
> relinquish the use voluntarily.' *Metzger,* 645 A.2d at 371.

*Latrobe I*, 686 A.2d at 890.

Despite that the Property has been unoccupied since 2000, there was no record evidence of an *intent* by the Slezak family or Eckenrode to abandon the nonconforming use *or* their *actual* abandonment of its nonconforming use. Rather, Wuycheck and Petty resided at the Property in its two units, "no attempt had been made to dismantle [its two-unit residential nature] or otherwise convert the use" prior to its sale, *Latrobe I*, 686 A.2d at 890, and Eckenrode purchased the Property as an investment with the intention of renovating and leasing out the two units. Objector proffered no evidence to the contrary. Under such circumstances, the ZBA properly concluded that there was no record evidence of an intent to abandon and actual abandonment of the Property's legal nonconforming use.

> This Court may not substitute its interpretation of the
> evidence for that of the Z[BA]. It is the Z[BA]'s function
> to weigh the evidence before it. The Z[BA] is the sole
> judge of the credibility of witnesses and the weight afforded
> their testimony. We must view the evidence in a light most
> favorable to the prevailing party, who must be given the
> benefit of all reasonable inferences arising from the
> evidence.

*Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015) (citations omitted). Accordingly, when "the record demonstrates the existence of substantial evidence, th[is C]ourt is bound by the [ZBA's] findings which are the

result of resolutions of credibility and conflicting testimony." *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2006). Because it is clear based on our review of the record that substantial evidence supported the ZBA's findings and conclusions that the Property is a legally-continuing nonconforming use, the trial court did not err by upholding the ZBA's decision.

Based on the foregoing, we affirm the trial court's order.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uptown Partners,                          :
                Appellant             :
                             :
             v.                      :
                             :
City of Pittsburgh Zoning            :
Board of Adjustment, City of        :    No. 528 C.D. 2017
Pittsburgh and Robert C. Eckenrode  :

## O R D E R

       AND NOW, this 27th day of December, 2017, the Allegheny County Common Pleas Court's March 22, 2017 order is affirmed.


                           _____
                           ANNE E. COVEY, Judge