IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis R. Cicconi, Jr.,     :
     Appellant   :
           :
   v.        :
           :  No. 328 C.D. 2021
Zoning Hearing Board of   :  No. 412 C.D. 2021
Tinicum Township     :  Argued: November 15, 2021


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY         FILED: January 4, 2022


    Louis R. Cicconi, Jr. (Applicant) appeals from the Delaware County Common Pleas Court's (trial court) February 19 and March 11, 2021 orders that affirmed the Tinicum Township (Township) Zoning Hearing Board's (ZHB) decisions that denied his applications to use 512 Wanamaker Avenue, Tinicum (Property), for a vehicular towing and storage yard as a prior nonconforming use,[1] and to approve the parking of vehicles used to transport the aged and infirmed as substantially similar to a towing and storage yard use. Applicant presents four issues[2] for this Court's review: (1) whether the ZHB erred when it found that the prior owner's vehicle towing and storage use at the Property was accessory to the auto repair business at the Property, rather than a separate, prior nonconforming principal use, despite that at the time the prior owner purchased the Property, it had

---

[1] "A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction." *Sowich v. Zoning Hearing Bd. of Brown Twp.*, 245 A.3d 1188, 1195 (Pa. Cmwlth. 2021).

[2] This Court has rephrased the issues for clarity.

been used for vehicular towing and storage; (2) whether the ZHB erred when it considered whether the proposed use was sufficiently similar to an auto repair use, rather than a towing and storage use; (3) whether Section 395-19.B(6) of the Township Zoning Ordinance (Zoning Code) is *ultra vires* and beyond the jurisdiction of the governing body to regulate nonconforming uses in the Special Use (SU) Zoning District;[3] and (4) whether the ZHB violated the Pennsylvania Municipalities Planning Code (MPC)[4] and Applicant's due process rights when it

---

[3] Section 395-19 of the Zoning Code provides:

> Special Use Districts.
>
> . . . .
>
> B. Use regulations. A building may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other . . . :
>
> > (1) Shopping center. Within a shopping center a building may be erected, altered or used, and a lot or premises may be used, for any of the following purposes and for no other: retail stores, banks, financial institution, personal service shops and restaurant: **any use of the same general character as any of the aforesaid uses when authorized as a special exception by the [ZHB].**
> >
> > (2) Motel or hotel.
> >
> > (3) An office building.
> >
> > (4) Light manufacturing.
> >
> > (5) Accessory use on the same lot with and customarily incidental to any of the above permitted uses.
> >
> > (6) **Such other uses as shall be determined by the [Township's] Board of Commissioners after hearing, upon giving two weeks' public notice of the time and place of the hearing and of the proposed use.**

Reproduced Record at 93a-94a (emphasis added).

Although Applicant failed to comply with Pennsylvania Rule of Appellate Procedure 2173, which requires that reproduced record pages be numbered followed by a small "a," this Court shall refer herein to the Reproduced Record's corresponding numbered pages in accordance with Rule 2173.

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 - 11202.

2

conferred with Township Zoning Officer Herbert E. MacCombie, III (Zoning Officer) in executive session regarding the decisions to be rendered. After review, this Court affirms in part, and reverses in part.

Applicant owns the Property, which is located in the SU Zoning District.[5] The Property was formerly owned by John F. Messerick (Messerick). During Messerick's ownership, Messerick performed towing services at the Property. Following Messerick's death in 1968, Russell Blake (Blake) purchased the Property in 1969 and operated Blake's Auto Body - an auto towing and storage, and auto body repair business. In 2019, Applicant purchased the Property from Blake's estate.

Applicant intends to lease one part of the Property to a towing and storage company, and the other part of the Property to a company that would use it for parking vehicles used in its transportation services for the special needs and elderly communities. Applicant submitted two applications to the Township: (1) for a Certificate of Occupancy to use part of the Property for a towing and storage yard as a prior nonconforming use (Towing Application); and (2) for a Certificate of Occupancy for the parking of vehicles used for the personal transportation of the elderly and infirmed as sufficiently similar to a towing and storage yard use. The Zoning Officer denied both applications.

Applicant filed a ZHB application appealing from the Zoning Officer's denial of the Towing Application.[6] Applicant also filed a ZHB application requesting a special exception pursuant to Section 395-19.B of the Zoning Code that personal service transporting is of the same general character as the permissible (shopping center) uses described therein; or, in the alternative, seeking a

---

[5] On June 17, 2002, the Township amended the Zoning Code in its entirety, and established a new SU Zoning District.

[6] ZHB Application No. 03-19.

3

determination that personal service transporting of the aged and infirmed is a legal nonconforming use as similar to the prior personal towing service use at the Property (Transportation Application).[7]

The ZHB held a hearing on September 19, 2019. The Zoning Officer testified that, in his review of Applicant's Applications, it appeared that the former Blake's Auto Body was an existing nonconforming use, with towing as an accessory use. The Zoning Officer also explained that towing is not a primary or enumerated use in the SU Zoning District, and, further that, in order to use the Property for transportation services (a second use not accessory to the proposed towing use), the Property would need to be subdivided to provide for the second use, and it does not appear that the Property meets the minimum acreage requirement for subdivision. With respect to permitted uses in an SU Zoning District, the Zoning Officer did not consider the Property to be a shopping center and, thus, the enumerated uses of Section 395-19.B(1) of the Zoning Code, which pertain to other uses permitted within a shopping center, would not apply to Applicant. Finally, the Zoning Officer raised concerns about public access to the Property, and whether there were any legal agreements that provide for such access.

Applicant testified that Blake previously used the Property as an auto repair shop, that he also towed and stored vehicles at the Property, and that the towing and storing of vehicles was separate and independent from the auto body shop. Applicant explained that Blake had a towing contract with the Township to tow and store cars that the Township required to be removed from Township streets, and Blake continued to use the Property for those purposes until the last year of his life - February 2018.[8] Applicant explained that he did not intend to continue the

---

[7] ZHB Application No. 04-19.

[8] Applicant also testified that when he purchased the Property, he relied on the information sheet provided by the real estate broker that the Property was approved for the continuation of the auto body repair use, the current access for which is via a recorded easement through a gas station

4

nonconforming auto body repair business at the Property. Rather, he is proposing two separate principal preexisting nonconforming uses at the Property - a bonded towing use, and a personal transportation use. Applicant presented a proposed floor plan depicting the intended uses at the Property.

Peter Romano (Romano), a former Township zoning and codes officer and a former ZHB member "at various times" between the 1970s and 2004, testified on Applicant's behalf that he was very knowledgeable about Blake's use of the Property, and that Blake's Auto Body was separate and distinct from his towing business.

On October 17, 2019, the ZHB reconvened and issued its written decisions and orders wherein it denied the Towing Application (Towing Order) and the Transportation Application (Transportation Order) (collectively, Orders). *See* Reproduced Record (R.R.) at 16a-17a, 120a-121a, 87a-89a. Thereafter, the ZHB issued its opinions in support of its Orders (collectively, Opinions). *See* R.R. at 18a-25a, 124a-132a.[9]

With respect to the Towing Application, the ZHB found that the Property is the former site of Blake's Auto Body shop, that Applicant purchased the Property from Blake's estate, and that Applicant proposed to use the Property for two uses - towing and transportation services. *See* R.R. at 19a. In its opinion supporting its Towing Order (Towing Opinion), the ZHB held:

---

property. Applicant stated that he also relied on the representation that the proposed Wawa on the adjacent property (currently church property) would provide access to the Property from Route 420. Applicant obtained an easement agreement for such access. Notwithstanding, counsel for the adjacent current church property and counsel for the proposed adjacent Wawa site advised the ZHB that the easement agreement obtained by Applicant across the proposed Wawa site was not valid, and would be removed from the record. Counsel further advised the ZHB that neither of their clients would object to the zoning approvals being sought.

[9] The ZHB's Orders and Opinions contain numerous identical findings of fact and conclusions of law.

5

1. The Zoning Officer properly denied the [Towing Application].

2. The prior non[]conforming use of the Property was an auto body shop with a permitted non[]conforming accessory towing use.

3. Based on the testimony provided at the hearing the [ZHB] found that towing services or operation was not a principal business or use at the Property during Blake's ownership and operation of the Property.

4. The towing services provided during such period were accessory to the automobile repair business operated as Blake's Auto [B]ody and not a primary or principal use at the Property.

5. Because the towing service was not a prior principal use at the Property, the [ZHB] also concludes that [a] towing service was not and is not a legal non[]conforming use at the Property.

6. Applicant is proposing two separate and distinct uses on the [P]roperty, towing and personal service of transporting aged and infirmed persons.

7. These proposed uses are not accessory to one another.

R.R. at 22a-23a.

In its opinion addressing the Transportation Application (Transportation Opinion), the ZHB concluded that the personal service of transporting aged or infirmed individuals or transportation operations are not a permitted use in the SU Zoning District, that such services were never principal uses at the Property, and, accordingly, are not legally nonconforming uses. The ZHB further held:

2. The prior non[]conforming use of the Property was an auto body shop with a permitted non[]conforming accessory towing use.

. . . .

6

7. Applicant is proposing two separate and distinct uses on the [P]roperty, towing and personal service of transporting aged and infirmed persons.

8. Neither of the proposed uses is accessory to the other and in fact Applicant is seeking different tenants for each business.

9. In order to utilize the Property for both proposed uses [sic] transportation services, (proposed towing use and transportation services use), the Property would need to be subdivided to provide for the second use and the Property does not meet the minimum acreage requirement for subdivision.

10. The Township Zoning Officer . . . provided credible witness testimony.

R.R. at 128a-129a. The ZHB also held that, absent the nonconforming use, Applicant's proposed use was not of the same general character as a shopping center to allow for a special exception,[10] and not a use permitted in the SU Zoning District without approval by the Township's Board of Commissioners.[11]

_____

[10] With respect to Applicant's special exception request, the ZHB explained:

Applicant's alternative request for special exception per Section 395-19.B(1) of the [Zoning Code] is also denied. Applicant requests the [ZHB] find such use is of the same general character as specified uses in the [O]rdinance; however, Section 395-19.B(1) [of the Zoning Code] pertains to permitted [s]hopping [c]enter use within the SU[] [Zoning] District and specific permitted uses within a [s]hopping [c]enter. The uses proposed for the Property do not include [a s]hopping [c]enter. Additionally, the [ZHB] finds that [] such proposed personal service transporting of aged and infirmed persons use is not of the same general character as the specified uses for [a s]hopping [c]enter and uses within same set forth in Section 395-19.B(1) [of the Zoning Code].

R.R. at 121a.

[11] The ZHB concluded:

13. . . . [T]he [ZHB] finds that [] the proposed us[e] of personal service of transporting aged or infirmed individuals or any transportation service is not of the same general character of the uses

7

Applicant appealed to the trial court, which held oral argument without taking additional evidence. On February 19, 2021, the trial court affirmed the ZHB's Transportation Order, but therein affirmed the ZHB's decisions on both the Transportation Application and the Towing Application.[12] On March 11, 2021, the trial court affirmed the ZHB's Towing Order, and similarly, therein again affirmed the ZHB's decisions on both the Towing Application and the Transportation Application.[13] On March 12, 2021, the trial court consolidated the two appeals.[14]

> specified for a shopping center in Section 395-19[.B(1) of the Zoning Code][.]
>
> 14. Only the [Township's] Board of Commissioners can authorize uses other than those enumerated in Section 395-19[.B] of the . . . Zoning Code after a duly advertised hearing on the proposed use.
>
> 15. Thus, only the [Township's] Board of Commissioners can approve the proposed personal service of transporting aged and infirmed individuals as legal use and occupancy of the [P]roperty provided that said use met the regulations and procedures identified in Section 395-19[.A of the Zoning Code].

R.R. at 130a.

[12] Trial court decision at Docket No. CV-2019-009343.

[13] Trial court decision at Docket No. CV-2019-009177.

[14] The trial court explained in its March 12, 2021 consolidation order:

> The [trial court] finds that consolidation is necessary to preserve the status quo and correct errors in papers relating to these matters as follows:
>
> As reflected in the dockets for the two cases, the [trial court] issued its initial scheduling and case management orders in case Civil Action Number 2019-009177, the only case assigned to the undersigned at the time. The ZHB filed its brief in connection with both land use appeals only in Civil Action Number 2019-009343. Both parties' briefs submitted to the [trial court] identified only Civil Action Number 2019-009343. The [trial court] entered its initial [o]rder resolving the issues presented with respect to both land use appeals in an [o]rder dated February 19, 2021[,] using the same Civil Action Number used by the parties in their briefs - 2019-009343. On March 10, 2021, [Applicant] filed a Notice of Appeal of the February 19[, 2021] [o]rder in Civil Action Number 2019-009343. Upon receipt of the Notice of Appeal, the [trial court] entered an

Appellant appealed from the trial court's February 19 and March 11, 2021 orders to this Court.[15]

**Prior Nonconforming Use**

Initially,

> [a] preexisting nonconforming use creates a vested property right in the owner of the property. Accordingly, "[t]he right to expand a nonconforming use to provide for the natural expansion and accommodation of increased trade is a constitutional right protected by the due process clause." *Jenkintown Towing Serv*[.] *v. Zoning Hearing Bd.*, . . . 446 A.2d 716, 718 ([Pa. Cmwlth.] 1982)[] (quoting *Silver v. Zoning Bd. of Adjustment*, . . . 255 A.2d 506, 507 ([Pa.] 1969)). Limitations on this right occur when the expansion is inconsistent with the public interest, where the proposed expansion is in actuality not an expansion of the old use, but the addition of a new use, or in order to prevent excessive expansion. Moreover, the fact that an expansion is sizeable does not make it unreasonable *per se*.

*Domeisen v. Zoning Hearing Bd. of O'Hara Twp.*, 814 A.2d 851, 856 (Pa. Cmwlth. 2003) (emphasis added; citation omitted).

Further,

---

> [o]rder dated March 11, 2021[,] in Civil Action Number 2019-009177, indicating that the March 11[, 2021] [o]rder and the prior February 19[, 2021] [o]rder addressed substantively the land use appeals in *both* Civil Action Number 2019-009177 and Civil Action Number 2019-009343. Other than the explanatory footnote 1 in the March 11[, 2021] [o]rder, the two orders of February 19 and March 11[, 2021] are identical.

R.R. at 102a-103a.

[15] "Where, as here, the trial court does not take additional evidence, this Court's review determines whether the [ZHB] committed an abuse of discretion or an error of law. An abuse of discretion will be found where the [ZHB's] findings of fact are not supported by substantial evidence." *Frederick v. Allegheny Twp. Zoning Hearing Bd.*, 196 A.3d 677, 686 n.13 (Pa. Cmwlth. 2018) (citation omitted).

> [t]he burden of proving the existence of a nonconforming use lies with the property owner. *Jones v. T[wp.] of N[.] Huntingdon Zoning Hearing B[d.]*, . . . 467 A.2d 1206, 1207 ([Pa. Cmwlth.] 1983). To establish a prior nonconforming use, the property owner must provide "objective evidence that the subject land was devoted to such use **at the time the zoning ordinance was enacted**." *Smalley v. Zoning Hearing B[d.] of Middletown T[wp.]*, . . . 834 A.2d 535, 538-39 ([Pa.] 2003). Satisfying this burden requires ["]conclusive proof by way of objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *Jones*, 467 A.2d at 1207.

*Sowich v. Zoning Hearing Bd. of Brown Twp.*, 245 A.3d 1188, 1195-96 (Pa. Cmwlth. 2021) (emphasis added).

Applicant argues that the ZHB erred when it determined that a towing and storage use was not a prior nonconforming use but, rather, accessory to the nonconforming auto body repair use at the Property. Applicant contends that he presented evidence to the ZHB demonstrating that there were two separate nonconforming principal uses at the Property when he purchased it in April 2019. According to Applicant, Messerick used the Property for his towing and storage business, and Blake operated an auto body repair business. Applicant declares that Blake acquired a vested right to expand on Messerick's preexisting, nonconforming towing and storage use when he purchased the premises in March 1969, and during Blake's ownership, Blake's towing and storage business was separate from his auto body repair business. Applicant asserts that the ZHB committed a gross abuse of discretion when it disregarded undisputed, substantial evidence that Blake used the Property for two separate nonconforming businesses and denied the applications.

Specifically, Applicant argues:

> The objective evidence sustaining a finding of pre[]existing, non[]conforming use in this record is not only un-rebutted but was provided by a former and a current Township official to prove that from 1954 to the

10

> death of [] Blake on February 14, 2018[,] the subject premises was the situs for two (2) separate non[]conforming principal uses viz. a towing/storage business established by [] Messerick in 1969 and succeeded to and expanded upon by [] Blake[,] and [] Blake's separate and independent auto body repair shop.

Applicant Br. at 10-11. Applicant emphasizes that "[t]he record before the ZHB was clear, precise and indubitable and uncontradicted to support the finding that when [Applicant] purchased the [Property] from the Estate of [] Blake in April[] 2019, he took title with the constitutional protection to continue two nonconforming uses on the [Property]." Applicant Br. at 14.

> The law is well established:

> [T]his Court may not substitute its interpretation of the evidence for that of the [ZHB]. It is the function of a [ZHB] to weigh the evidence before it. The [ZHB] is the sole judge of the credibility of witnesses and the weight afforded their testimony. Assuming the record contains substantial evidence, we are bound by the [ZHB's] findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence.

> A [ZHB] is free to reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness.

*Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005) (citations omitted). "A [ZHB] abuses its discretion only when its findings are not supported by substantial evidence in the record." *Conshohocken Borough v. Conshohocken Borough Zoning Hearing Bd.*, 261 A.3d 582, 592 n.5 (Pa. Cmwlth. 2021). Notwithstanding, "[w]hile we are bound by the [ZHB's] determinations on credibility and evidentiary weight, we must conduct an independent review of the record to determine whether the [ZHB's] findings of fact are supported by substantial evidence." *Id*.

11

The ZHB clearly ruled that the Zoning Officer "provided credible witness testimony." R.R. at 23a, 129a. The Zoning Officer testified that approximately one month prior to the hearing, he received Applicant's Applications. He related:

> In looking at [Applicant's applications], what I did was this . . . . I reviewed it.
>
> Right now, **how I looked at it**, __it appeared to me__ that **was an existing nonconforming auto body**. They did have towing as an accessory use to bring their vehicles in, and one of them is towing. So __for me__ the towing was an approved accessory use. If they wanted to use it as an auto body with that, I would have probably said it was fine.
>
> However, that was a primary use that they wanted, and that is not an enumerated use on that [P]roperty and in the [SU] [Z]oning [D]istrict.

R.R. at 31a-32a (emphasis added).

In its Towing Opinion, the ZHB, citing to the Zoning Officer's limited testimony, characterized the testimony as evidence that the "former Blake's Auto Body __was__ an existing non[]conforming auto body with an approved accessory towing use[.]" R.R. at 19a (emphasis added); *see also* R.R. at 128a ("The prior non[]conforming use of the Property was an auto body shop with a permitted non[]conforming accessory towing use."). Although deemed credible, the Zoning Officer's statement was the sole testimony suggesting that towing was an accessory use to a primary auto body business. Importantly, such testimony is simply the Zoning Officer's legal conclusion, bereft of any supporting facts to substantiate the conclusion. There is no other record testimony supporting the Zoning Officer's conclusion.

Nonetheless, the ZHB ultimately concluded in its Towing Opinion that "[t]he prior non[]conforming use of the Property was an auto body shop with a

12

permitted non[]conforming accessory towing use" and, "[b]ased on the testimony provided at the hearing[,] the [ZHB] found that towing services or operation was not a principal business or use at the Property during Blake's ownership and operation of the Property."[16]  R.R. at 22a.  Thus, the ZHB's factual finding, and its legal conclusions based thereon, are not supported by the record evidence.[17]

In contrast, Applicant testified to his long-time familiarity with Blake's businesses at the Property and the existence of separate nonconforming uses thereon. Applicant stated that, before Blake owned the Property, Messerick used the Property for his towing business, and leased part of the Property to Blake for Blake's Auto Body.  Applicant further recalled that, after Blake purchased the Property, he operated a bonded towing service serving the Township and the public, and Blake's Auto Body on the Property.

Former Township zoning and codes officer and former ZHB member Romano testified as follows:

> Q. [Applicant's Counsel:]  Okay.  One of the issues before the [ZHB] . . . this evening is whether [] Blake had a towing business that was independent and separate from his auto body repair business.
>
> A. He did.
>
> Q. And how do you know that, sir?
>
> A. I know that he received a permission [sic] from the [s]tate to have a bonding yard.  And he did towing for various townships, not just [the] Township, that were put

---

[16] The Zoning Officer's testimony pertained to the Property and the former Blake's Auto Body at the time he reviewed the applications in 2019, which was after Blake's death.

[17] With respect to the Transportation Application, the ZHB concluded that, "[b]ased on the testimony provided at the hearing[,] the [ZHB] found that the personal service of transporting aged or infirmed individuals or transportation operations of any kind were never principal uses or businesses at the Property at any time in the past[,]" and "[t]he personal service of transporting aged or infirmed individuals or transportation operations of any kind are not legally non[]conforming uses at the Property."  R.R. at 129a.

13

in that yard. And he did not repair all the cars that went in that yard, because I personally witnessed cars being towed out of that yard to be repaired at other places.

Q. And to your knowledge did that matter -- did that type of use continue up through 2004, while you were the zoning officer?

A. Yes, until -- really until [Blake's] death.

Q. So you were familiar with his business at that location?

A. Very familiar with it.

Q. After you terminated your employment[?]

A. Very familiar. Good friend of mine.

Q. How was it that the towing service was begun or began there as a bonded business or bonded use?

. . . .

A. I'm not familiar with the exact procedure as to how that came along. But the Township was – they [sic] were comfortable with the fact that he had a bonding yard. Because they [sic] used him to pick up vehicles off the street, abandoned vehicles, that were stored in his yard and then went to the scrap yard. So he did a service for the Township also.

Q. So he had a contract with the Township to take any vehicles they [sic] requested [he] get off the streets of the Township?

A. Well, I don't know if he had a personal contract, but he did that work for the Township.

Q. Okay. And that was separate and apart from his auto body repair use.

A. Absolutely.

R.R. at 53a-54a.

ZHB Chairman Edward Rubillo (ZHB Chairman Rubillo) then questioned Romano:

14

Q. I do recall, prior to [] Blake's ownership, [Messerick] owned that [P]roperty; correct?

A. Certainly did. He owned all that [P]roperty.

Q. Right. He also was doing towing and repairs. He was responsible for towing and repairs.

A. [Messerick] never did any repair. [] Blake did the repair for him.

Q. Right.

A. But [Messerick] also did towing. It wasn't a bonded yard when he was doing the towing.

Q. When I recall [] Blake was towing, he was also towing for -- if you called for a tow, he would tow your vehicle too.

A. That's correct.

Q. Yeah. So he was also bonded for the Township and for private towing too?

A. And you may know the dates better than me, because you were on the police force.

[ZHB Chairman Rubillo]: That I was. He did tow my vehicle one time. Thank you, thank you.

R.R. at 55a-56a. Thus, ZHB Chairman Rubillo acknowledged in his questioning that Messerick operated a towing business at the Property but did not perform repairs, that Blake conducted auto body repairs at the Property during the time Messerick did towing, and that when Blake was engaged in towing for individuals, and as a bonded towing provider for the Township, he did so apart from his auto body repair business.

It is a property owner's burden to prove a prior nonconforming use. *Sowich*. To meet this burden, the owner must present objective evidence that the property was put to such use before the ordinance's enactment. *See id*. Having concluded that the ZHB's determination - that Blake's only primary use of the

15

Property was as a nonconforming auto body business (and that towing was an accessory use) - was based solely on the Zoning Officer's factually unsupported legal conclusion, this Court considers whether substantial record evidence demonstrates that Applicant met his burden.

With respect to witness testimony, the ZHB's factual findings merely state that the witnesses testified to particular facts, rather than declaring that those facts indeed occurred. Regarding the Towing Application, the ZHB found: "Applicant testified that [] Blake previously utilized the Property as an auto repair shop and that he additionally towed and stored vehicles at the Property, essentially that he had two separate businesses or uses on the Property." R.R. at 20a. The ZHB did not make a credibility determination with respect to Applicant's testimony. Similarly, although the ZHB acknowledged that "Romano, a former zoning and codes officer and [ZHB] member[,] testified that he was knowledgeable about the use of the Property and that []Blake's auto body business was separate and apart from his towing business[,]" the ZHB did not state whether it found Romano credible, or otherwise address his testimony. R.R. at 21a, 127a. Nor did it acknowledge or reconcile ZHB Chairman Rubillo's expressed agreement with Romano's testimony.[18]

The record reflects that Romano testified that Blake was his friend, that he was very familiar with the Property's use preceding Applicant's purchase, that Messerick operated a towing service and Blake operated an auto body business during Messerick's ownership and, thereafter, Blake purchased the Property and

---

[18] "Appellate courts cannot properly and efficiently exercise even a limited function of judicial review without the [ZHB's] necessary findings of fact and conclusions of law together with reasons for its decision, even when the record contains [the] complete testimony presented to the [ZHB]." *Upper Saucon Twp. v. Zoning Hearing Bd. of Upper Saucon Twp.*, 583 A.2d 45, 48 (Pa. Cmwlth. 1990).

operated separate bonded towing/storage and auto body businesses until his death. If credible, such testimony is objective evidence of a prior conforming primary towing use at the Property.

At oral argument before this Court, the ZHB's counsel acknowledged the ZHB's familiarity with Romano, noted that Romano's testimony was undisputed, and agreed that the ZHB did not find Romano not credible. The ZHB's counsel also conceded at oral argument that the ZHB agreed that, at one time, there had been separate towing and auto body shop uses at the Property, but the ZHB believed the separate towing use did not continue. Notwithstanding, the ZHB's counsel acknowledged that the ZHB did not show or make a determination of abandonment of that nonconforming use.[19] Accordingly, this Court reverses the trial court's orders regarding the Towing Application.

## Sufficiently Similar Use

Applicant next asserts that, assuming this Court determines that Blake and Messerick used the Property for towing and vehicle storage - an independent primary nonconforming use in an SU Zoning District - Applicant is entitled to approval of his Transportation Application, because the intended use for parking and transportation services is sufficiently similar to the prior towing and storage use, so as not to constitute a new or different use.

This Court has explained:

> To qualify as a continuation of a nonconforming use, the current use must be sufficiently similar to the nonconforming use as not to constitute a new or different

---

[19] The Pennsylvania Supreme Court has held: "[A]bandonment of a nonconforming use [cannot] be shown by mere proof of failure to use the property for a certain period of time. Moreover, . . . the burden of proof of abandonment is on the party asserting the same." *Latrobe Speedway v. Zoning Hearing Bd. of Unity Twp.*, 720 A.2d 127, 131-32 (Pa. 1998) (citations omitted).

17

use. *Limley v. Zoning Hearing B*[*d.*] *of Port Vue Borough*, . . . 625 A.2d 54, 55 ([Pa.] 1993). The proposed use need not, however, be identical to the existing use; **similarity in use is all that is required**. *Id*. (citing *Pappas* [*v. Zoning Bd. of Adjustment*], 589 A.2d [675,] 677-78 [(Pa. 1991)]). In determining what is a proper continuation of a nonconforming use, *i.e.*, whether a proposed use bears adequate similarity to an existing nonconforming use, the doctrine of natural expansion must be given effect. *Limley*, 625 A.2d at 56. The doctrine of natural expansion "permits a landowner to develop or expand a business as a matter of right notwithstanding its status as a nonconforming use." *Pappas*, 589 A.2d at 677. A mere increase in the intensity of a use cannot justify a finding of a new or different use. *Foreman v. Union T*[*wp.*] *Zoning Hearing B*[*d.*], 787 A.2d 1099, 1103 (Pa. Cmwlth. 2001). *See also, e.g.*, *Limley*, 625 A.2d 54 (use of property as public restaurant and bar was permissible expansion of prior nonconforming use as private club); *Pappas*, 589 A.2d 675 (full-service pizza restaurant was permissible expansion of takeout sandwich shop); *Clanton v. London Grove T*[*wp.*] *Zoning Hearing B*[*d.*], 743 A.2d 995 (Pa. Cmwlth. 1999) (processing topsoil by drying and bagging it prior to transport was continuation of nonconforming use of trucking loose topsoil away for bulk sale).

*Itama Dev. Assocs., LP v. Zoning Hearing Bd. of Twp. of Rostraver*, 132 A.3d 1040, 1051 (Pa. Cmwlth. 2016) (emphasis added).

> Further, . . . our Supreme Court has instructed that, "once it has been determined that a nonconforming use is in existence, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth." [*Chartiers Twp. v.*] *William H. Martin*[*, Inc.*], 542 A.2d [985,] 988 [(Pa. 1988)]; *see also Pappas*, 589 A.2d at 677.

*Dipal Corp. v. Chartiers Twp. Zoning Hearing Bd.*, 261 A.3d 1097, 1106 n.9 (Pa. Cmwlth. 2021).

18

Noting that Messerick's and Blake's operations of their towing and storage businesses, "utilized a portion of the [P]roperty to park and store vehicles," Applicant Br. at 17, Applicant contends:

> [T]he proposed tenant-user . . . is in the business of transporting special needs children and adults that have communication and behavioral disorders as well as senior citizens on occasions. To provide this service entails four (4) full-time employees operating Monday thru [sic] Friday from 5:00 a[.]m[.] to 8:00 p[.]m. The business would have no walk[-]in traffic at this site. The business simply requires the parking of approximately 35 vehicles on site. The drivers would come to the yard in the morning and receive their assignments and return the vehicles to the yard at the end of the day. The proposed use is similar to requiring the parking of only 35 vehicles maximum.

Applicant Br. at 15-16.

The ZHB responds that the prior nonconforming use was as an auto body repair business. However,

> even if the [ZHB] had determined that the prior legal non[]conforming use was as a towing yard, no evidence was presented to establish that the proposed use as [a] parking area for 35+ transportation vehicles was in any [sic] similar to an existing auto [body] repair business or towing operation other than vehicles would be on the lot. In the case of the proposed transportation, the vehicles would be parked when not out in the community providing transportation services. In the case of [the] towing yard, towed vehicles towed are stored there until claimed or repaired. It is submitted that <u>parking</u> of vehicles when not in use for the business and which will travel in and out of the Property during the business day (and presumably employee parking during business operations as well) is not a substantially similar use to the <u>storage</u> of towed vehicles, nor is there any similarity in the underlying business operations. The only similarity is the existence of vehicles, just as there would be in an office parking lot or an auto dealership.

ZHB Br. at 13-14.

19

Applicant argues that this Court's decision in *Itama* controls. In *Itama*, the property at issue contained a four-bay garage and an underground diesel-fuel tank. The former owner, a school district, had used the garage for storage, fueling, parking, and routine maintenance of its school buses and vehicle fleet, which use continued even after the school building was demolished. Itama purchased the property and sought a certificate of occupancy for its prospective tenant, a company providing fresh water to gas-well drillers, wherein the tenant planned to park approximately 25 water trucks at the site on an intermittent basis and the trucks were on the road for the majority of each 24-hour day. The zoning hearing board approved the certificate of occupancy as a continuation of a prior nonconforming use. The prospective tenant withdrew from the deal, and Itama leased the property to a commercial trucking operation serving the natural gas drilling industry. Thereafter, the local zoning officer issued numerous violations for the tenant's use. On appeal to the zoning hearing board, Itama argued that its lessee's "use of the [p]roperty did not change the prior nonconforming use . . . *i.e.*, a vehicle garage dispatching trucks and providing hauling services offsite, and parking vehicles incident to such activities." *Itama*, 132 A.3d at 1050. The zoning hearing board found that the tenant had engaged in nonconforming uses, despite Itama's insistence that the use was the same as the zoning hearing board had previously approved.

On appeal, this Court reversed the zoning hearing board's decision, explaining:

> During the relevant time period from 2009 through 2013, the [s]chool [d]istrict used the [p]roperty as a vehicle garage for fueling, maintaining and dispatching its buses and vehicles. It is undisputed that the [school d]istrict's buses departed the [p]roperty in the morning, picked up and delivered students to school, and then returned to the [p]roperty. The process was reversed at the end of the day. As noted above, the [zoning hearing board] erred in concluding that the parking of vehicles for any duration

20

> was not ancillary to the [s]chool [d]istrict's operation of a vehicle garage. Indeed, the [zoning hearing b]oard approved Itama's application to continue the nonconforming use of the [p]roperty as a vehicle garage without limitation, and with full knowledge that Itama's proposed tenant would essentially be running a trucking operation 12 months a year. The incidental storage of roll-off boxes and other containers is an increase in the intensity of the prior use, but is not sufficiently dissimilar to the [s]chool [d]istrict's vehicle garage as to constitute an impermissible expansion of the prior nonconforming use.

*Itama*, 132 A.3d at 1051.

Here, unlike in *Itama*, the prior and proposed business types and functions are entirely unrelated, with the only similarity being that vehicles would be parked at the Property. In *Itama*, the prior and proposed uses were essentially dispatch yards. In the instant matter, there is no such similarity between Messerick's and Blake's uses and Applicant's proposed business use that primarily involves transporting the elderly and infirmed, using part of the Property to park the lessee's fleet of vehicles. Each day, the lessee's 35 vehicles parked overnight at the Property will be dispatched, used to provide transportation services, and returned to the Property. Blake's former home on the Property would serve as the lessee's office. The same vehicles will be stored, so long as they are retained and used by the transportation company lessee, unlike a towing and storage company that only temporarily houses particular vehicles. The vehicles stored by the lessee will be the lessee's vehicles, unlike a towing storage yard that stores vehicles owned by others. The Property's proposed use to dispatch its own vehicles differs from the prior use of storing others' vehicles. The incidental storing of the transportation company's vehicles at the Property does not render the operation of a transportation service at the Property equivalent or sufficiently similar to a towing and storage service. Thus, *Itama* does not control this Court's disposition of the issue.

21

For these reasons, this Court agrees with the ZHB that a business operation providing transportation services with vehicle storage at the Property is not sufficiently similar to the prior use as a towing service and storage yard to be a continuation of a nonconforming use. Accordingly, the ZHB properly denied the Transportation Application.

### Ultra Vires Zoning Code Provision

Applicant contends that Section 395-19.B(6) of the Zoning Code impermissibly grants the Township's Board of Commissioners decision-making authority over zoning applications in violation of the MPC. Applicant maintains that Section 395-19.B(6) of the Zoning Code is *ultra vires*.[20]

Referencing an exchange between the Township Solicitor and the Zoning Officer, Applicant next asserts that the Zoning Officer, Township Solicitor, and, ultimately, the ZHB, erroneously concluded "that the [Township's] Board of Commissioners has the authority to grant applications for 'such other uses as shall be determined by the [Township's] Board of Commissioners [pursuant to Section 395-19.B(6) of the Zoning Code], **when applied to nonconforming uses** . . . ."[21] Applicant Br. at 20 (emphasis added). Applicant expounds:

---

[20] "An *ultra vires* action is one which is performed without authority to act, beyond the scope or in excess of the legal powers authorized." *Cnty. of Butler v. Local 585, Serv. Emps. Int'l Union*, 744 A.2d 338, 342 n.6 (Pa. Cmwlth. 1999) (italics added).

[21] Applicant refers to the following exchange between the Township Solicitor and the Zoning Officer:

> [Township Solicitor]: [**I**]**f the Board did <u>not</u> find that this was a preexisting use** -- and the SU [ Zoning D]istrict is a strange animal in the [Township] Code.
>
> [Applicant's Counsel]: It's one of the strangest ones in the county, if I can offer that opinion.
>
> [Township Solicitor]: We know this. This we know.

[I]t is the exclusive obligation of the [ZHB] alone to hear and decide appeals from the decisions of the Zoning Officer. [Section 909.1(a)(3) of the MPC, added by the Act of December 21, 1988, P.L. 1329, *as amended by* the Act of July 4, 2008, P.L. 319,] 53 P.S. [§] 10909.1(a)(3). When that review concerns the legitimacy of pre[]existing, non[]conforming uses, the [ZHB] must solely decide the matter by application of the [c]ommon [l]aw of Pennsylvania. In this [s]tate, the protections afforded to pre[]existing non[]conforming uses are of constitutional dimension. For the [ZHB] to suggest and for the [trial] court to confirm that a pre[]existing, non[]conforming use in [the] SU[ Zoning] District is to be regulated as a conditional use by the [Township's] Board of [Commissioners] is nothing short of a procedural and substantive due process violation under both the [s]tate and the [f]ederal Constitutions.

Applicant Br. at 22.

The ZHB responds:

Although referenced in the decision of the [ZHB], Section 395-19[.B] of the [] Zoning Code, did not form the basis of either denial by the [ZHB]. Rather, the applications were denied based on [Applicant's] failure to establish, to the satisfaction of the [ZHB], that the proposed uses for the Property were prior legal non[]conforming uses and,

---

[Zoning Officer]: It wouldn't be required, a variance. It would be required and it says such other uses that would be permitted by the [Township's] Board of Commissioners.

[Township Solicitor]: Right.

[Zoning Officer]: That's what it says.

[Township Solicitor]: The way the Township has handled that is in essence like a conditional use hearing. But it actually comes to this [ZHB] first for a recommendation, which is the strangest thing in the world[.] I agree.

But I would suggest that **if this [ZHB was] to find that it was**, **you know**, **not a preexisting use**[,] **that the [ZHB] would make**, **you know**, **whatever recommendation at least with respect as if you were going to go to the** [**Township's**] **Board of Commissioners**.

R.R. at 72a-73a (emphasis added).

23

with respect to the Transportation Application, a use similar to the prior legal non[]conforming use.

ZHB Br. at 17.

Importantly, this Court's review of the exchange between the Solicitor and the Zoning Officer reflects that their discussion pertained to referral to the Township's Board of Commissioners when no nonconforming use is found, not, as Applicant suggests, when a nonconforming use exists. Further, the ZHB's references to Section 395-19.B(6) of the Zoning Code in its Orders and Opinions come after the ZHB has already concluded therein that the proposed uses are not legal nonconforming uses. *See* R.R. at 17a, 23a, 121a, 129a. After concluding that the proposed uses are not legal nonconforming uses, the ZHB declares in its Opinions that such uses are not permitted in the SU Zoning District, and notes the requirement for the Township's Board of Commissioners' approval where the proposed use is not among those enumerated in the SU Zoning District. Thus, the ZHB did not base its Orders denying the applications on any perceived requirement that continuation or expansion of a prior nonconforming use must be approved by the Township's Board of Commissioners.

Because the ZHB did not deny the applications on the basis Applicant alleges, but, rather, denied the applications because the ZHB found that the proposed uses were not prior nonconforming uses, this Court shall not address whether Section 395-19.B(6) of the Zoning Code requiring the Township Board of Commissioners' approval for uses proposed beyond those enumerated is *ultra vires*.

### Zoning Officer's Alleged Improper Participation in Deliberations

Finally, Applicant argues that the ZHB violated Section 908 of the MPC[22] and Applicant's due process rights when it conferred with the Zoning Officer

___

[22] Section 908(8) of the MPC provides:

in executive session regarding the decisions to be rendered. Applicant asserts that "the record fails to disclose . . . that[, following the September 19, 2019 ZHB hearing,] the ZHB retired for at least 30 minutes before returning to announce that no decision would be entered that evening[,]" and that "the ZHB permitted the Zoning Officer . . . to attend and confer with the [ZHB] during that executive session." Applicant Br. at 6 n.1. Applicant further asserts that "due process requires a local governing body in the performance of its *quasi*[-]judicial functions to avoid even the appearance of bias or impropriety." Applicant Br. at 23.

The ZHB responds that Applicant waived this argument because he did not object to the Zoning Officer's alleged involvement in the ZHB's September 19, 2019 deliberations at either the September 19 or the October 17, 2019 ZHB meetings. Further, Applicant did not raise the issue before the trial court.

The law is well established that "a party has a duty to preserve an issue at every stage of a proceeding . . . [and] also must comply with the general rule to raise an issue at the earliest opportunity." *Campbell v. Dep't of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 349 (Pa. Cmwlth. 2014). "Issues not raised at the earliest possible time during a proceeding are waived." *Grever v. Unemployment*

---

> The [ZHB] . . . shall not communicate, directly or indirectly, with any party or his representatives in connection with any issue involved except upon notice and opportunity for all parties to participate, shall not take notice of any communication, reports, staff memoranda, or other materials, except advice from their solicitor, unless the parties are afforded an opportunity to contest the material so noticed and shall not inspect the site or its surroundings after the commencement of hearings with any party or his representative unless all parties are given an opportunity to be present.

53 P.S. § 10908(8). Section 908(3) of the MPC states: "The parties to the hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the [ZHB], and any other person including civic or community organizations permitted to appear by the [ZHB]." 53 P.S. § 10908(3).

25

*Comp. Bd. of Rev.*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010).[23]  This Court has specifically found that an appellant waived his argument alleging a due process violation resulting from commingling of prosecutorial and adjudicatory functions "because []he failed to raise the matters before the governmental agency." *Jackson v. Ind. Univ. of Pa.*, 695 A.2d 980, 981 (Pa. Cmwlth. 1997).

In his reply brief, Applicant does not assert (and the record does not reflect) that Applicant raised the Zoning Officer's alleged improper participation to the ZHB at either the September 19 or October 17, 2019 ZHB hearings, nor does the record reflect that Applicant raised the alleged commingling issue to the trial court.[24] "[I]ssues not raised in the trial court in zoning appeals are waived and may not be raised later." *Friendship Pres. Grp., Inc. v. Zoning Bd. of Adjustment of Pittsburgh*, 808 A.2d 327, 331 n.3 (Pa. Cmwlth. 2002).  Because Applicant failed to raise this issue before the ZHB and/or the trial court, the issue is waived.


## Conclusion

For all of the above reasons, the trial court's Orders are affirmed with respect to the Transportation Application, and are reversed with respect to the Towing Application.


_____
ANNE E. COVEY, Judge

---

[23] *Grever* was superseded on other grounds by Pennsylvania Rule of Appellate Procedure 1513(d), as recognized in *Morgan v. Unemployment Compensation Board of Review*, 108 A.3d 181 (Pa. Cmwlth. 2015).

[24] Notably, in his reply brief, Applicant contends only that he did not have the opportunity to argue the due process issue before the trial court, not that he ever raised the issue to the trial court.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Louis R. Cicconi, Jr.,            :
            Appellant        :
                                  :
          v.                  :
                                  :   No. 328 C.D. 2021
Zoning Hearing Board of      :   No. 412 C.D. 2021
Tinicum Township           :

## O R D E R

AND NOW, this 4th day of January, 2022, the Delaware County Common Pleas Court's February 19 and March 11, 2021 orders are AFFIRMED with respect to Tinicum Township Zoning Hearing Board (ZHB) Application No. 04-19, and are REVERSED with respect to ZHB Application No. 03-19.

_____
ANNE E. COVEY, Judge