IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of 1406 Properties, LLC      :
from the Decision, dated                   :
November 22, 2021, of the Zoning           :
Hearing Board of Upper Providence          :
Township                                   :
                                           :   No. 1226 C.D. 2022
Appeal of: 1406 Properties, LLC            :   Argued: April 11, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: May 9, 2024


        1406 Properties, LLC (Applicant) appeals from an order of the Court
of Common Pleas of Montgomery County (trial court).  The trial court affirmed the
denial by the Zoning Hearing Board (ZHB) of Upper Providence Township
(Township) of Applicant's requests for a special exception and multiple variances.
Upon review, we affirm the trial court's order.


                            **I. Background**

        Applicant owns a tract of real property (Property) in the Township.
Reproduced Record (R.R.) at 179a.  Approximately 2.15 acres of the Property,
fronting on Ridge Pike, lies in the NC Neighborhood-Convenience Commercial
Zoning District (NC District).  *Id.*  The majority of the Property, approximately 10.4
acres, lies in the R-1 Residential-Agricultural Zoning District (R-1 District).  *Id.*

The Property is currently used and occupied by a construction asphalt paver, Kehoe Construction, Inc., and a second unidentified tenant. R.R. at 181a. The Property is currently in use as

> seven-numbered areas, including: (i) area 1 – landscape supplies, including mulch, crushed stone, crushed concrete, sand, topsoil, and other aggregates; (ii) area 2 – stockpiles of dirt, mulch, crushed and uncrushed concrete; (iii) area 3 – precast products such as concrete blocks and jersey barriers; (iv) area 4 – topsoil screen, a crusher, a tub grinder, a shredder, and other construction equipment stored; (v) area 5 – recycled tree stumps and concrete; (vi) area 6 – rented storage spaces . . . ; and (vii) area 7 – concrete storage bins.

*Id.* at 180a. No part of the Property is currently used for offices. *Id.* at 181a. The current uses of the Property do not constitute permitted uses in either the NC District or the R-1 District. *Id.* However, the Township acknowledges that all current uses constitute lawful preexisting nonconforming uses of the Property. *Id.* at 182a-83a.

In May 2021, Applicant submitted an application (Application) to the Township's Director of Planning and Zoning for a special exception and multiple variances. R.R. at 172a. Applicant seeks to construct two 35-foot-tall buildings on the Property, described as warehouses and divided into units to be leased. *Id.* at 183a. One building would be 35,000 square feet in size, located at the front of the property near Ridge Pike, and situated in both the NC and R-1 Districts. *Id.* That building would be divided into approximately 14 rental units with at least 500 square feet of office space each. *Id.* The other building would be 65,100 square feet in size, located in the rear half of the Property and entirely in the R-1 District. *Id.* That building would be divided into approximately 26 rental units with at least 500 square feet of office space each. *Id.* There would also be outside storage areas for each building, including loading docks or ramps and parking for tenant vehicles and

equipment. *Id.* at 184a. Applicant's proposed plan also includes landscape buffer areas and stormwater management. *Id.* There are no leases in place for the planned buildings; Applicant "foresees the tenants will be contractors in the need of warehouse space with a little office space and some outdoor storage, including contractors in the pool business, building, landscaping, property maintenance, plumbers, electricians, maybe some automobile accessories, parts, printing, and things of that [n]ature." *Id.* (internal quotation marks omitted). Tenant uses might also include light manufacturing, to occur only inside the buildings, as well as storage of processed materials. *Id.* at 185a. No processing of stone would occur on the Property, and existing crushers and screeners would be removed. *Id.*

Applicant's proposed plan for development of the portion of the Property located in the R-1 District does not comply with any of the uses permitted in the R-1 District.[1] R.R. at 185a. Applicant did not consider development of the

---

[1] Regarding uses in the R-1 District, Section 182-40 of the Code of the Township of Upper Providence, Pa. (1990) (Code) provides:

In an R-1 Residential-Agricultural District, a building may be erected, altered or used and a lot or premises may be used or occupied for any of the following uses and no other:

A. Agricultural uses, provided that a tract of not less than five acres is available and further provided that any building used in the keeping or raising of livestock or poultry shall be located not less than 100 feet from an ultimate right-of-way line and not less than 50 feet from any other property line.

B. A single-family detached dwelling.

C. Any of the following uses when authorized as a special exception:

(1) A greenhouse.

(2) Noncommercial recreation uses, including golf, tennis and swimming clubs.

3

R-1 portion of the Property in compliance with the permitted uses for the R-1 District under the zoning provisions of the Code, such as for residential dwellings. *Id.* at 185a-86a, 192a-93a & 200a. Applicant's engineer testified that residential development would not fit Applicant's needs, stating, "It's a business model. They're not in the home business." *Id.* at 186a.

The ZHB found that Applicant's proposed plan for development of the portion of the Property located in the NC District does not comply with any of the uses permitted in the NC District.[2] R.R. at 186a. The record does not indicate that

---

. . . .

(4) A stand, for use more than six months in any calendar year, for the sale of products of the farm on which it is located.

(5) Communications antennas, in accordance with the provisions of § 182-21.1, mounted on an existing public utility transmission tower, existing building or other existing structure, and communications equipment buildings, only upon a showing, in addition to any other that may be required under this chapter, that denial of such a special exception would have the effect of prohibiting the provision of personal wireless service. Communications towers are not permitted.

D. Accessory uses on the same lot with and customarily incidental to any permitted use.

E. Home occupations, provided that all of the requirements of § 182-21.4 herein can be met.

F. No-impact home based businesses in accordance with the standards set forth in § 182-21.3 herein.

*Id.* (editor's notes, footnotes, and reserved subsections omitted).

[2] Regarding uses in the NC District, Section 182-86 of the Code, which is far more detailed and complex than Section 182-40, provides:

In an NC . . . District, a building or group of buildings may be erected, altered or used and a lot may be used or occupied for any of the following uses and no other:

A. One of the following uses are permitted on parcels with a minimum lot area of 1/2 acre (21,780 square feet):

(1) Personal service shops such as barbers, hairdressers, dry cleaners/laundries, and self-service/coin-operated laundry operations. Machine laundry and dry-cleaning plants shall not be permitted within this district; dry-cleaning/laundry establishments are limited to pickup stations only.

(2) Doctor, dentist, orthodontist or other similar professional office, limited to a sole practitioner, with ancillary staff.

(3) Business office, limited to a sole practitioner, with ancillary staff.

(4) Communication antennas.

(5) An accessory use on the same lot with and customarily incidental to any of the above permitted uses.

(6) Conditional uses permitted on parcels with a minimum lot area of 1/2 an acre (21,780 square feet) and subject to the standards outlined within § 182-86G, herein:

(a) Any use of the same general character, but not specifically named, as those uses set forth in Subsection A(1) through (5), herein.

B. Uses permitted on parcels with a minimum lot area of one acre (43,560 square feet):

(1) Any use or any combination of two of the uses listed within Subsection A of this section. The combination of uses must be within a single building; or

(2) Any one of the following uses:

(a) Retail sale of goods in an individual store, including variety and general merchandise, including clothing, food, prescription drugs, household supplies or furnishings, repair or sale of jewelry, watches and clocks, optical goods, repair or sale of household electronics, or the sale and repair of musical, professional or scientific instruments.

(b) A business or professional office, studio, bank or other financial institution, or public utility office. As regulated by § 182-90.1, uses

5

within rehabilitated buildings will earn a bonus of 10% additional building coverage and 5% additional impervious coverage.

(c) Doctor, dentist, orthodontist or other similar professional office with four or fewer practitioners, with ancillary staff.

(d) Restaurant, cafe or similar establishment.

[1] Restaurant shall not contain drive-in facilities.

[2] Curbside pickup facilities are permitted, and any parking spaces associated with or labeled as "curbside" shall not be included as part of the required number of parking spaces under Article XXII.

[3] Any parking spaces for curbside pickup facilities must be installed a minimum of 65 feet from the main entry to the restaurant and be contiguous to the building.

(3) An accessory use on the same lot with and customarily incidental to any of the above permitted uses.

(4) Conditional uses permitted on parcels with a minimum lot area of one acre (43,560 square feet) and subject to the standards outlined within § 182-86G, herein:

(a) Any use of the same general character, but not specifically named, as those uses set forth in Subsection B(1) through (3) herein.

(5) Conditional uses, per the requirements in § 182-86G, permitted on parcels with a minimum lot area of one acre and with a minimum two-hundred-foot frontage on a road classified as collector or higher by the Upper Providence Township Rights-of-Way Map. . . . .

(a) Drive-in/fast-food restaurants.

[1] Drive-in/fast-food restaurant hours will be limited to between 6:00 a.m. and 12:00 midnight on any day during the week.

[2] The drive-in portion of any drive-in/fast-food restaurant shall not be permitted within 100 feet of any lot that is residentially used or zoned.

[3] Drive-in/fast-food restaurant uses do not include portable food carts, temporary food stands, temporary barbeque stands, outdoor sales of food or any other temporary food vending operation, all of which are prohibited.

(b) Outdoor eating facilities (i.e., sidewalk cafes). Applicants for this conditional use shall show that the outdoor eating space will not impede pedestrian flow, parking or other traffic.

(c) Any combination of the uses contained within Subsection B herein.

[1] The design and overall appearance of buildings must be harmonious and fit within the context of the surrounding neighborhood and comply with the requirements of the design guidelines in § 154-36.3 of Chapter 154, Subdivision and Land Development.

(d) Banks or other financial institutions, with drive-through facilities.

(e) Office buildings or office campus complexes with no more than two buildings.

(f) Gas stations or other automotive repair facilities, but not including any use which includes vehicle painting and/or vehicular body repair. Except for incidental emergency repair work, vehicle repairs and service are to be conducted indoors.

(g) An accessory use on the same lot with and customarily incidental to any of the above uses. . . .

C. Uses permitted on parcels with a minimum lot area of three acres (130,680 square feet):

(1) Any combination of the uses listed within Subsection A or B herein.

(a) The uses may be in separate buildings; however, the design and overall appearance of buildings must be harmonious and fit within the context of the surrounding neighborhood and comply with the requirements of the design guidelines in § 154-36.3 of Chapter 154, Subdivision and Land Development.

7

(b) If existing buildings are retained and rehabilitated for the uses contained herein, the same coverage bonuses regulated by § 182-90.1 shall apply; or

(2) Any of the following uses:

(a) Funeral parlor.

(b) Motel or motor court.

(c) An auction establishment, flea market or outdoor sale of a similar nature.

(d) Post office.

(e) Day-care facility.

(3) An accessory use on the same lot with and customarily incidental to any of the above permitted uses.

(4) Conditional uses permitted on parcels with a minimum lot area of three acres (130,680 square feet) and subject to the standards outlined within § 182-86G herein:

(a) Any use of the same general character, but not specifically named, as those uses set forth in Subsection C(1) through (4) herein.

(b) Vehicular sales facilities, which may include vehicle repair, but not vehicular body work, and must meet the following conditions:

[1] The tract must have at least 200 feet of frontage on a street designated as a collector.

[2] The tract must be within 1,500 feet of an arterial street.

[3] Vehicular sales facilities may not be located on any parcel that abuts a tract with residential zoning or use.

[4] Vehicle delivery shall be conducted on site, or through off-site contract arrangements, but not on public streets or rights-of-way.

[5] Customer and employee parking areas are clearly identified and not used for vehicle display purposes.

[6] Except for incidental emergency repair work, vehicle repairs and service are to be conducted indoors.

[7] Display vehicles shall not be displayed on elevated stands or located within five feet of any property line.

[8] Accessory uses such as repair facilities or other uses incidental to the primary use of vehicular sales, may not occupy more than 50% of the premises and must be conducted in direct relationship to the principal use.

[9] Vehicle display space may be reduced to eight feet by 16 feet, and vehicles may be stacked three cars deep without side aisleways. In the first row of a front yard display, vehicles adjacent to the public right-of-way may not be parked or displayed any tighter than achieved with ten-foot wide parking spaces.

(c) Wholesale sales which may have an associated storage facility or self-service storage facility.

[1] Deliveries and general servicing cannot typically require tractor-trailer trucks of WB-40 classification or larger.

[2] The facility does not require a loading dock, forklift, or similar mechanical device for loading/unloading.

[3] All nonvehicular storage shall be contained within a building or collection of buildings with a similar design and appearance.

[4] Any building face seen from abutting public streets shall have a generally retail appearance.

[5] Any storage or sales facilities that have residential uses or zoning immediately adjacent must include a Type 3 buffer[] on the shared property line. . . .

[6] Recreational vehicle and automobile storage is permitted outside on no more than 5% of the net lot area; provided, however, that all vehicles stored on site have a current registration with the Commonwealth of Pennsylvania.

[7] The area set aside for outdoor storage of recreational vehicles or automobiles shall be at least 100 feet from any residentially zoned or used property and shall not be visible from any roadway.

[8] Maximum building coverage may be increased by 5% if there is no outside storage of recreational vehicles or automobiles, and an additional 5% if maximum impervious coverage is reduced to 65% or less.

. . . .

D. As a secondary use to those listed above, residential units are permitted only above street level on a commercial establishment, with the following restrictions:

(1) Sufficient parking for all uses is provided in accordance with the requirements of this district and with Article XXII, Off-Street Parking and Loading.

(2) In parcels less than one acre (43,560 square feet), two residential units are permitted.

(3) In parcels larger than one acre (43,560 square feet), no more than three residential units are permitted.

(4) An accessory use on the same lot with and customarily incidental to any of the above permitted uses is permitted as a conditional use.

E. Bed-and-breakfast establishments are permitted on any size lot, provided that:

(1) It is conducted out of an existing single-family building;

(2) All guest stays are limited to one week or less;

(3) All parking is provided on the side or in the rear of the building, with none located further forward than the front of the building;

(4) Two parking spaces shall be provided for the resident innkeeper, one additional space shall be provided for each guest room, and one additional space for each employee during the highest staffing period.

(5) No more than one sign identifying the facility may be provided, which shall conform to the requirements of § 182-145C if it is freestanding, or be

10

Applicant ever considered developing that portion of the Property in compliance with the Code's permitted uses for the NC District before seeking variances. *Id.* at 192a-93a & 200a.

Applicant initially suggested that its proposed development would be merely a continuation of its existing lawful nonconforming use. R.R. at 186a. The Township, however, took the position that the proposed development would not be a continuation of the existing use and that relief from the Code's requirements would be necessary for the proposed development. *Id.* Accordingly, Applicant submitted its application for a special exception and multiple variances, as follows:

> a. A variance, if required, from Section 182-173.A. of the [Code], to permit the proposed development and

---

a maximum of 20 square feet if attached to the building. Any sign may be illuminated only through indirect lighting.

F. Outdoor storage. The use of outdoor areas for any type of storage is prohibited. The use of semitrailers, metal storage or shipping containers or temporary storage buildings for temporary storage or during a loading or unloading procedure is permitted only in designated loading areas.

G. Standards for consideration of conditional uses. The Board of Supervisors shall determine that the following standards are met prior to granting approval of a conditional use application:

(1) The use will not generate a significantly greater amount of traffic volume than those uses permitted within the NC . . . District herein in the judgment of the Township Board of Supervisors, upon recommendation of the Township Engineer and Traffic Consultant, based upon the submission of a traffic impact study, as per the requirements of § 182-89B herein.

(2) The use shall not generate noise, noxious odors, air pollution or glare nor result in pedestrian-vehicular conflict or other safety hazards.

(3) Any necessary loading and unloading operations shall be carried on within or contiguous to the facade of any conditional use structure.

Code, § 182-86 (editor's notes and footnotes omitted).

11

use, as a continuation of the nonconforming use of the . . . Property, to be conducted indoors.

b. A special exception under, and if necessary, a variance from, Section 182-173.C. of the [Code], to permit the majority of the current nonconforming uses, which are presently conducted outdoors, to be conducted indoors as part of the proposed development and use.

c. In the alternative to the requested variance from Section 182-173.A. and the requested special exception or alternative variance under or from Section 182-173.C.:

(1) A variance from the permitted use provisions of the R-1 District at Section 182-40 of the [Code], to permit the proposed development and use to the extent located and conducted on that portion of the . . . Property in the R-1 District.

(2) A variance from the permitted use provisions of the NC District at Section 182-86 of the [Code], to permit the proposed development and use to the extent located and conducted on that portion of the . . . Property in the NC District.

d. A variance from the maximum 10% building coverage requirement of Section 182-41.B. of the [Code], to permit the building coverage of the proposed development and use, to the extent located in the R-1 District, to be approximately 19.19% of that portion of the . . . Property within the R-1 District.

*Id.* at 187a.[3] Variance requests c and d were submitted as alternatives to variance and special exception requests a and b. *Id.* at 195a.

---

[3] Applicant originally included the following additional variance request:

e. A variance from the six-month permit application time period under Section 182-195.D. of the [Code], to allow Applicant a period of one year from the date of the [ZHB] decision granting Application No. 21-09, as amended, to apply for building or other

After a hearing held in August 2021, the ZHB issued an order denying the Application. R.R. at 172a & 203a. In its accompanying decision, the ZHB concluded that no variance from Section 182-173.A. of the Code was necessary for the proposed development and use of the Property; that Applicant was not entitled to a special exception or the alternative variance requested under Section 182-173.C. of the Code because the proposed development and use of the Property does not constitute a continuation or natural expansion of the existing lawful nonconforming use; that Applicant did not satisfy its burden of proof for variances from the R-1 District and NC District use provisions at Section 182-40 and Section 182-86, respectively, of the Code; and that Applicant is not entitled to a variance from the maximum 10% building coverage limitation of Section 182-41.B. of the Code because that variance request was rendered moot by the denial of the other requests in the Application.[4] R.R. at 202a-03a.

Applicant appealed to the trial court, which affirmed the ZHB's order without taking additional evidence. R.R. at 821a & 831a. Applicant's appeal to this Court followed.

---

permits to which Applicant may be entitled as a result of such decision.

R.R. at 187a. This last variance request was related to delays anticipated as a result of the COVID-19 pandemic. Applicant has withdrawn this request, and it is not at issue in this appeal.

[4] The ZHB also denied Applicant's request for a variance from the six-month application deadline, but as noted above, that issue is not before this Court on appeal.

13

## II. Issues

Applicant raises three issues on appeal.[5]  First, Applicant asserts that the ZHB committed an error of law or abuse of discretion by denying a special exception pursuant to Section 182-173 of the Code for the alteration or expansion of a legal nonconforming use.  Second, Applicant contends that the ZHB committed an error of law or abuse of discretion by denying variances from Sections 182-40 and 182-86 of the Code that would allow the proposed use of the Property in the R-1 and NC Districts.  Third, Applicant posits that the ZHB committed an error of law or abuse of discretion by denying a variance from Section 182-41.B. of the Code to allow 19.19% building coverage for the portion of the Property in the R-1 District, where maximum coverage is 10.0%.

## III. Discussion

### A. Alteration or Expansion of Nonconforming Use

Applicant insists it presented substantial competent evidence that its proposed development would merely constitute an alteration[6] or expansion of the

---

[5] Where the trial court takes no additional evidence in a conditional use matter, our review is limited to considering whether the local governing body erred as a matter of law or abused its discretion, which occurs when the body's findings of fact are not supported by substantial evidence. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1212 n.8 (Pa. Cmwlth. 2014).

[6] We observe that the Code does not allow for a special exception for an "alteration" of a legal nonconforming *use*.  Rather, Section 182-173.A. of the Code relates to alteration of a nonconforming building, structure, or land; it provides:

> No structural alterations or additions or enlargements of any nonconforming building, structure or land will be permitted which would violate the side, front or rear yard setback lines or building coverage of the zone in which the building, structure or land is located, provided that in residential zones where there is a

14

existing legal nonconforming use on the Property. Applicant reasons that the current and proposed uses are similar in nature because both involve rental of space to contractors, storage of their supplies, equipment and vehicles, and processing of raw materials into other products. Applicant claims it "simply proposes to conduct these activities in two [] future buildings rather than continue them outdoors." Br. of Appellant at 12. We disagree.

Section 182-173.C. provides that an existing nonconforming use may be "expanded or extended when authorized by a special exception by the [ZHB] . . . ." Code, § 182-173.C. This provision is consistent with the doctrine of natural expansion, which we have described as follows:

> The natural expansion doctrine provides that "a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted." *Nettleton v. Zoning [Bd.] of Adjustment of the City of Pittsburgh*, . . . 828 A.2d 1033, 1037 n.3 ([Pa.] 2003) (quoting *Humphreys v. Stuart Realty*, . . . 73 A.2d 407, 409 ([Pa.] 1950)). The rationale of the doctrine has its origins in the due process

nonconforming use as to side, front or rear yard setback line, a permissible alteration or addition may be built on the line with the existing side, front or rear nonconforming building line, respectively, except that a violation of a setback line not previously violated shall not be permitted.

Code, § 182-173.A. Moreover, expansion or extension of an existing nonconforming building or structure is limited "to a total maximum of 50% of the area devoted to the use as of the effective date of [Chapter 182 of the Code]." Code, § 182-173.C. Here, the area presently devoted to nonconforming structures is zero, a 50% expansion of which is still zero. Therefore, Section 182-173.A. is inapplicable; alteration of a nonconforming building or structure is not at issue here. (As the entire Property is currently subject to the existing nonconforming use, there is no issue concerning expansion of the land in that regard.)

15

requirements protecting private property; if a person owns property which constitutes an existing, legal, non-conforming use, it is "inequitable to prevent him from expanding the property as the dictates of business or modernization require." *Silver v. Zoning* [*Bd.*] *of Adjustment*, . . . 255 A.2d 506, 507 ([Pa.]1969). A municipality cannot, per se, prohibit the natural expansion of a non-conforming use. *Id.* . . . at 508.

To determine whether a use qualifies as a continuation or expansion of a non-conforming use, our Supreme Court has held that the proposed use need not be identical to the current use. *Domeisen v. Zoning Hearing* [*Bd.*] *of O'Hara* [*Twp.*], 814 A.2d 851, 856 (Pa. Cmwlth. 2003). Rather, the proposed use must be sufficiently similar to the non-conforming use as to not constitute a new or a different use. *Id.* Our Supreme Court has also held that a change in instrumentality will not defeat the purpose or existence of a non-conforming use. [*Twp.*] *of Chartiers v. William H. Martin, Inc.*, . . . 542 A.2d 985, 988 ([Pa.]1998). The Court, in *Chartiers*, warned that an "overly technical assessment" of an established nonconforming use cannot be utilized to "stunt" its natural development and growth. *Id.* . . . at 988. Thus, the owner of a nonconforming use may utilize modern technology into the business without fear of losing that business. *Id.* . . . at 989.

However, the right to expand a nonconforming use is not unlimited, and a municipality has every right to impose reasonable restrictions. *Silver*, . . . 255 A.2d at 507. For instance, the right to expand does not include the right to add a second non-conforming use. *Daley v. Zoning Hearing* [*Bd.*] *of Haverford* [*Twp.*], . . . 461 A.2d 347 (Pa. Cmwlth. 1983) . . . .

*Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1230-31 (Pa. Cmwlth. 2007) (footnote omitted). Applicant concedes that "[t]o qualify as a continuation of an existing nonconforming use, a proposed use must be sufficiently similar to the nonconforming use as not to constitute a new or different use." Br. of Appellant at 18 (first citing *Limley v. Zoning Hearing Bd. of Port Vue Borough*, 625 A.2d 54, 54

16

(Pa. 1993); then citing *Itama Dev. Assocs., LP v. Zoning Hearing Bd. of Twp. of Rostraver*, 132 A.3d 1040, 1051 (Pa. Cmwlth. 2016);[7] and then citing *Foreman v. Union Twp. Zoning Hearing Bd.*, 787 A.2d 1099, 1103 (Pa. Cmwlth. 2001)).

Here, the ZHB did not err in denying a special exception. Applicant insists it will merely be continuing the existing outdoor uses indoors, but that is manifestly not the case. As set forth above, the Property is currently in use for storing materials such as mulch, crushed stone, crushed concrete, sand, topsoil, dirt, topsoil screen, crushed and uncrushed concrete, concrete blocks and jersey barriers, a crusher, a tub grinder, a shredder, recycled tree stumps, rented storage spaces, and concrete storage bins. R.R. at 180a. No part of the Property is currently used for offices. *Id.* at 181a. Although there are no leases in place for the planned buildings, Applicant "foresees" future use of the proposed buildings as "warehouse space with a little office space, storage of processed materials, light manufacturing, and some outdoor storage, by contractors in the pool business, building, landscaping, property maintenance, plumbers, electricians, automobile accessories, parts, printing, and things of that [n]ature." *Id.* at 184a-85a.

We conclude that the ZHB did not err in finding that Applicant's proposed possible uses of the Property were not sufficiently similar to the existing nonconforming use to constitute a continuation or expansion rather than a new use. Further, to the extent that Applicant contends that its proposed uses are permitted under the Code, Applicant has failed to explain how its proposed uses fit within the permitted uses in the Code, as set forth in note 2, *supra*. Moreover, we observe that

---

[7] Although Applicant's brief does not use quotation marks, the quoted language actually constitutes a direct quote of the language contained in *Limley v. Zoning Hearing Board of Port Vue Borough*, 625 A.2d 54, 54 (Pa. 1993), and *Itama Development Associates, LP v. Zoning Hearing Board of Township of Rostraver*, 132 A.3d 1040, 1051 (Pa. Cmwlth. 2016), not merely a citation. We have likewise omitted the additional quotation marks in quoting the brief.

17

Applicant failed to state with sufficient specificity exactly what uses it intends to make of the buildings it proposes to construct on the Property. As the future tenants are unknown, Applicant's anticipation of what types of businesses *might* lease space in the buildings is merely speculative.

Applicant insists it offered "credible evidence" that it will not be altering the existing uses, but merely enclosing them in buildings to that effect. Br. of Appellant at 15. Credibility determinations, however, are for the ZHB. *Omatick v. Cecil Twp. Zoning Hearing Bd.*, 286 A.3d 413, 429 n.19 (Pa. Cmwlth. 2022), *appeal denied*, 301 A.3d 420 (Pa. 2023). Moreover, in analyzing whether substantial evidence supports an agency's findings, courts must view the evidence in the light most favorable to the party that prevailed before the fact-finder. *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513 (Pa. Cmwlth. 2018). The relevant question on appeal is not whether, as Applicant contends, it presented evidence in support of its position that would have justified the ZHB in making different findings, but rather, whether there was substantial evidence to support the findings the ZHB actually made. *Id.* Here, as discussed above, Applicant's own evidence established the differences between the current uses of the Property and those proposed to take place in the buildings Applicant seeks to construct. Thus, the ZHB's findings were supported by substantial evidence.

Applicant also observes that its proposed development would "clean up and modernize" the Property, reduce noise, and provide a landscaping buffer, all of which would make the Property more attractive. Br. of Appellant at 20-21 & 24. However, whether a proposed use will improve the appearance of a property is not

18

part of the standard for obtaining a special exception.[8]  Nothing in that standard suggests that either a motive to improve a property's appearance or an expected

---

[8] That standard is:

§ 182-199 Permits for variances and special exceptions.

A. All applications for variances and special exceptions shall be made in writing on forms furnished by the Township Secretary.

B. Special exceptions shall not be granted by the Zoning Hearing Board unless the applicant therefor shall establish:

> (1) That the granting of the special exception will not adversely affect the public interest.

> (2) That the proposed structure or development complies with the letter and intent of this chapter.

> (3) That the public health, safety and welfare have been protected in the following respects, where applicable:

>> (a) Ingress and egress to and from property and proposed structures thereon, with particular reference to automotive and pedestrian safety and convenience, traffic flow and control and access in case of fire or catastrophe.

>> (b) Off-street parking and loading areas, where required, with particular attention to the items in Subsection B(1) above with the noise, glare or odor effects of the special exception on adjoining properties and properties generally in the district.

>> (c) Refuse and service areas, with particular reference to the items in Subsection B(1) and (2) above.

>> (d) Utilities, with reference to locations, availability and compatibility.

>> (e) Screening and buffering, with reference to type, dimensions and character.

>> (f) Signs, if any, and proposed exterior lighting with reference to glare, traffic safety and compatibility and harmony with properties in the district.

19

improvement of a property will support a variance or a special exception. *See also Center City Residents' Ass'n v. Zoning Bd. of Adjustment of Phila.* (Pa. Cmwlth., No. 1217 C.D. 2008, filed July 29, 2009),[9] slip op. at 7 (concluding that an applicant's evidence of the improvements it would make to the appearance of the property and the steps it would take to leave the daily life of the neighborhood unchanged did not support a variance). Further, at least as to the landscaping buffer, Applicant has not pointed to any requirement for a special exception to allow the installation of such a buffer.

For all of these reasons, the ZHB did not err or abuse its discretion in denying the special exception.

### B. Variances from the R-1 and NC District Restrictions

As an alternative to its special exception request, Applicant next asserts that the ZHB erred and abused its discretion in denying variances from the R-1 and

---

(g) Required yards and other open spaces.

(h) The general compatibility with adjacent properties and other property in the district.

C. To the extent permitted by law, all burdens of proof, persuasion and going forward with evidence shall be upon the landowner in connection with any variance or special exception. In allowing a variance or special exception, the Zoning Hearing Board may attach such reasonable conditions and safeguards in addition to those expressed in the chapter, as it may deem necessary to implement the purposes of the Pennsylvania Municipalities Planning Code [Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202] and this chapter . . . .

Code, § 182-199 (editor's note omitted).

[9] We cite this unreported opinion as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

NC District use provisions of Code Sections 182-40 (R-1 District) and 182-86 (NC District). We disagree.

The ZHB found that Applicant failed to meet its burden of proving the requisites for variance relief. R.R. at 201a-02a. Applicant asserts that, in so finding, the ZHB ignored some supporting evidence. Br. of Appellant at 27. However, Applicant's arguments regarding use variances misconstrue these requisites and do not offer viable legal justifications for the variances requested here.

Under Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC),[10] a use variance may be granted,

> provided that all of the following findings are made where relevant in a given case:
>
> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (3) That such unnecessary hardship has not been created by the appellant.
>
> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

21

the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2.

Regarding the first criterion for variance relief, Applicant presented evidence tending to show that the Property has unique physical circumstances or conditions, specifically narrowness, sloping topography, and the presence of a man-made pond affecting access to part of the Property. R.R. at 13a, 53a, 55a, 107a-08a &124a-25a. Critically, however, Applicant did not meet the second and third criteria for variance relief. Applicant utterly failed to demonstrate that, *because of* those physical conditions of the Property, it cannot be developed in strict conformity with the provisions of the Code, and a variance is necessary to enable the reasonable use of the Property.

Applicant also fails to recognize that although it did not create the Property's physical conditions, it nonetheless created any resulting *hardship* itself. Applicant posits that "[t]he current use of the Property is not reasonable. It is an unsightly mess." Br. of Appellant at 28. However, Applicant's own evidence indicated that *it had not explored whether it could feasibly use the Property for a permitted use*; it simply sought a variance because the proposed buildings and new commercial or industrial uses were part of its "business model." R.R. at 186a. In its brief, Applicant argues that "[t]he purpose of this proposal is to take the activities currently being done outdoors on the Property, and put them within and immediately adjacent to two [] buildings. These variances are the only relief that will afford [Applicant] the ability to accomplish this." Br. of Appellant at 30. Thus, Applicant

22

is again asserting that it needs variances simply to accomplish its self-created business goals, *not* to make a reasonable use of the Property. Applicant fails to point to any evidence that residential construction is not feasible on the R-1 portion of the Property or that none of the commercial uses permitted in the NC District would be reasonable.

This Court has previously held that an applicant does not establish an undue hardship justifying variance relief merely by asserting an economic hardship that arose based on the applicant's own business plan. *Borough of Pitcairn v. Zoning Hearing Bd.* (Pa. Cmwlth., No. 1253 C.D. 2021, filed Jan. 22, 2024), slip op. at 12-13 (citing *Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 475 (Pa. Cmwlth. 2021) (explaining that "[w]here variances are sought solely to enhance profitability, the asserted hardship arises not from the nature and circumstances of the property itself but is self-inflicted by way of the variance applicant's preferred or proposed use of the property")) (additional citation omitted).

Applicant has similarly failed to meet the fifth variance criterion. Applicant offers a bare averment that its requested variances represent the minimum relief necessary. Br. of Appellant at 30. All that Applicant really asserts, however, is that the relief requested is the minimum that will allow Applicant *to accomplish its business goal*. *Id.* As discussed above, Applicant has failed to point to any record evidence that another reasonable use of the Property cannot be made in conformity with the Code's limitations.

For these reasons, we conclude that the ZHB did not err or abuse its discretion in denying Applicant's request for variances from the use limitations in the Code relating to the R-1 and NC Districts.

## C. Variance from Maximum Lot Coverage Limitation

Because the ZHB denied Applicant's requests for a special exception and use variances, it concluded that Applicant's request for a variance from the lot coverage limitation was "rendered moot, and, therefore, that it is not necessary for the [ZHB] to decide the merits of the requested variance." R.R. at 201a. Applicant maintains that this was error. The focus of Applicant's argument, however, is not the ZHB's failure to reach the merits of that issue, but rather, its failure to grant the lot coverage variance.[11] *See* Br. of Appellant at 31-34. Once again, we disagree with Applicant's position.

Applicant acknowledges that the same criteria apply to dimensional variances as to use variances. Br. of Appellant at 31-32. Applicant observes, however that a dimensional variance is of lesser moment than a use variance and that the quantum of proof required to establish unnecessary hardship is less than for a use variance. *Id.* at 32-33 (citing *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998)).

Applicant posits, in a conclusory fashion, that it "presented sufficient testimony showing that this variance is required for the reasonable use of the Property." Br. of Appellant at 33. Applicant's supporting argument, however, belies its bare averment. The gist of Applicant's reasoning is that its proposed use of the Property is reasonable and would be more "orderly" than the current use; that the proposed uses are similar to those permitted in the Township's M-1 Office and Limited Industrial Zoning District and some uses permitted in the M-2 Manufacturing Industrial District under the Code, where permitted lot coverages are

---

[11] Nonetheless, we deem the merits of the lot coverage variance to be a subsidiary of the ZHB's failure to reach that issue, and therefore, the merits are not waived. *See* Pa.R.A.P. 1925(b)(4)(v).

40% and 60% respectively; and that "the building coverage variance will not alter the essential character of the neighborhood." *Id.* at 33-34. Nothing in this argument asserts any unnecessary hardship from complying with the more stringent lot coverage restrictions of the R-1 and NC Districts, in which the Property is located. Further, in its argument here, as in its argument in Section III.B above, Applicant points to the narrow and sloping character of the Property, the presence of a manmade pond, and limited sight distance governing driveway placement on the Property, but fails to connect those conditions to any unnecessary hardship. Just as Applicant has not pointed to any evidence that it could not reasonably develop the Property for a permitted purpose, it has not pointed to any evidence that it could not reasonably develop the Property in compliance with the lot coverage restrictions in the Code.

For these reasons, we conclude that the ZHB did not err or abuse its discretion in failing to grant Applicant a variance from the Code's lot coverage limitations.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of 1406 Properties, LLC :
from the Decision, dated :
November 22, 2021, of the Zoning :
Hearing Board of Upper Providence :
Township :
                                        :    No. 1226 C.D. 2022
Appeal of: 1406 Properties, LLC :

# **O R D E R**

AND NOW, this 9th day of May, 2024, the order of the Court of Common Pleas of Montgomery County, entered September 14, 2022, is AFFIRMED.

 

_____
CHRISTINE FIZZANO CANNON, Judge